The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Troy MONDRAGON, Defendant–Appellant.

No. 06CA1293.

Colorado Court of Appeals, Div. VII.

April 16, 2009.

John W. Suthers, Attorney General, Corina Gerety, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GABRIEL.

Defendant, Troy Mondragon, appeals a judgment of conviction entered upon jury verdicts finding him guilty of attempted first degree murder, first degree assault, first degree burglary, and second degree burglary. As an apparent matter of first impression in Colorado, we conclude that where, as here, a defendant's mental disease or defect renders him incompetent to decide whether or not to exercise his right to testify in his own defense, he is incompetent to stand trial. Because the trial court did not apply the correct legal standards in addressing the issue of defendant's competence, and because addi-

tional factual findings are required, we remand for further proceedings consistent with this opinion.

## I. Background

In the middle of the night on March 23, 2003, the victim was sleeping in his apartment when he was stabbed repeatedly with a large kitchen knife. Although seriously injured, he survived this attack. In connection with this incident, defendant was charged with attempted first degree murder after deliberation, first degree assault (serious bodily injury by means of a deadly weapon), first degree burglary, and second degree burglary. The prosecution later added two crime of violence counts.

On a number of occasions, both prior to and during trial, the trial court addressed the issue of defendant's competency. Experts performed numerous evaluations of defendant in this regard, and several experts concluded that defendant was mentally ill. For example, one expert testified that defendant suffered from bipolar disorder with psychotic delusions. Among other things, defendant thought that he worked for the FBI, the CIA, and other agencies that infiltrated Satanist cults, and that he was involved in special operations as an archangel or an agent for good. The prosecution's principal expert, however, concluded that defendant was malingering.

Prior to trial, at the request of defendant's counsel, the court held a hearing on the issue of defendant's competence. The court found defendant competent to proceed, stating:

> [T]here is no evidence that Defendant is unable to testify. The evidence, viewed most favorably to Defendant, is that he suffers from a delusion which is the product of a mental disease or defect and that, based on this delusion, he presently does not intend to testify at his trial. These facts do not satisfy the statutory definition of incompetence.

The issue of defendant's competence arose again during trial when, after the court advised defendant pursuant to *People v. Curtis*, 681 P.2d 504, 514 (Colo.1984), as to his right to testify in his own defense, defendant informed the court that he would not testify.

Defendant explained that his decision was based on his belief that law enforcement officers would kill him or his family if he did.

After hearing defendant's explanation, the court noted that if he believed what he was saying, then he was "completely delusional." In addition, the court stated that it could not find in good faith that defendant had made a knowing, voluntary, and intelligent decision not to testify. Nonetheless, the court again found defendant competent to proceed. In reaching this conclusion, the court focused on the fact that defendant understood his right to testify, his right not to do so, and the consequences of both decisions. At the end of trial, the court also noted that defendant appeared to be able to consult with his attorney and his investigator. The court believed that these facts further supported its finding that defendant was competent. The court added, however, that if defendant were incompetent, it would be because he could not make a knowing, voluntary, and intelligent waiver of his right to testify.

At the conclusion of trial, the jury found defendant guilty on all counts. He now appeals.

## II. Incompetency

Defendant first argues that the trial court erred in determining that he was competent to continue to stand trial where his delusions rendered him incompetent to decide whether or not to testify in his own defense. We conclude that the trial court applied the wrong legal standards in reaching its decision.

■ We review a trial court's competency determination for an abuse of discretion. *People v. Palmer*, 31 P.3d 863, 865–66 (Colo. 2001). A trial court abuses its discretion where its decision is manifestly arbitrary, unreasonable, or unfair, *People v. Ibarra*, 849 P.2d 33, 38 (Colo.1993), or where it applies an incorrect legal standard. *BS & C Enters., L.L.C. v. Barnett*, 186 P.3d 128, 130 (Colo. App.2008).

■ Subjecting a defendant to trial when he is incompetent violates the defendant's right to due process. *Palmer*, 31 P.3d

at 866. At a hearing to determine a defendant's competency to proceed, "the party asserting the incompetency of the defendant [has] the burden of submitting evidence and the burden of proof by a preponderance of the evidence." § 16–8.5–103(7), C.R.S.2008. Under former section 16–8–102(3), which is applicable here, a defendant is "incompetent to proceed" if he suffers from a mental disease or defect that renders him or her incapable of (1) understanding the nature and course of the proceedings against him or her, or (2) participating or assisting in his defense or cooperating with his defense counsel. Ch. 44, § 39–1–105(1), 1972 Colo. Sess. Laws 225 (subsequently codified at § 16–8–102(3) until repeal in 2008); cf. § 16–8.5–101(4), C.R.S. 2008. More particularly, to be competent, a defendant must have "a sufficient present ability to consult with his counsel with a reasonable degree of *rational* understanding, and a present *rational* and factual understanding of the proceedings against him." *People v. Morino,* 743 P.2d 49, 51 (Colo.App. 1987) (emphasis added) (citing *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). This so-called *Dusky* standard applies equally to questions of a defendant's competence generally and to questions of a defendant's competence to choose to exercise or waive his constitutional rights. *See Godinez v. Moran,* 509 U.S. 389, 398–99, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) (*Dusky* standard applies to a defendant's decision to waive the right to counsel).

■ Under the *Dusky* standard, a defendant lacks the requisite rational understanding if he does not have "a sufficient contact with reality"—that is, "if his mental condition precludes him from perceiving accurately, interpreting, and/or responding appropriately to the world around him." *Lafferty v. Cook,* 949 F.2d 1546, 1551 (10th Cir.1991); *see also Coleman v. Saffle,* 912 F.2d 1217, 1227 (10th Cir.1990) (no reason to believe that the defendant was not in touch with reality); *United States v. Hemsi,* 901 F.2d 293, 296 (2d Cir.1990) (noting evidence that the defendant's impaired sense of reality prevented him from acting effectively on his intellectual understanding and cooperating rationally in his defense); *Balfour v. Haws,* 892 F.2d 556, 561 (7th Cir.1989) (noting and rejecting coun-

sel's belated suggestion that the defendant was not sufficiently in contact with reality to defend himself); *Strickland v. Francis,* 738 F.2d 1542, 1551–52 (11th Cir.1984) (noting that the defendant's delusional characteristics and psychotic disorders made it difficult for him to deal with reality); *Lokos v. Capps,* 625 F.2d 1258, 1267 (5th Cir.1980) (although the defendant could understand and respond to questions put to him, he was unable to relate realistically to the problems of his defense and was "not operating in the world of reality").

■ Thus, a defendant's factual understanding of the proceedings, proper orientation as to time, place, and person, and his ability to furnish accurately information as to his past history and the events at issue are not alone sufficient to establish the defendant's competence. *Lafferty,* 949 F.2d at 1551–55. Rather, the defendant's perceptions and understandings must also be rational and grounded in reality. Accordingly, as the Tenth Circuit stated in *Lafferty,* 949 F.2d at 1554–55:

> This court cannot accept as consistent with *Dusky* and its progeny a finding of competency made under the view that a defendant who is unable to accurately perceive reality due to a paranoid delusional system need only act consistently with his paranoid delusion to be considered competent to stand trial.

Such a result, the *Lafferty* court held, cannot be reconciled with the requirements of due process. *Id.* at 1556.

■ Applying these principles here, we conclude that the trial court abused its discretion in finding defendant competent to stand trial, because it applied the incorrect legal standards in several respects.

First, in its initial finding of competence, the court did not consider whether defendant met his burden of proof by a preponderance of the evidence. Instead, the court examined the evidence in the light most favorable to defendant. For the reasons noted above, this was error, and it is unclear to us whether the court relied on the same erroneous standard in its later finding of competence at trial following the *Curtis* advisement.

Second, the court did not properly assess defendant's competency according to the *Dusky* standard—that defendant must possess a sufficient present ability to consult with his counsel with a reasonable degree of *rational* understanding, and a present *rational* and factual understanding of the proceedings against him. Instead, the court appears to have based its competency determination exclusively on whether defendant factually understood the proceedings and whether he had the cognitive ability to assist in his defense or cooperate with his counsel, regardless of whether his perceptions and understandings were grounded in reality. As noted above, a proper competency determination under *Dusky* requires *both* a factual understanding and cognitive ability *and* perceptions and understandings that are rational and grounded in reality. *See Lafferty*, 949 F.2d at 1551–55.

The court's erroneous application of *Dusky* is perhaps best illustrated in its apparent determination that defendant could not voluntarily, knowingly, and intelligently waive his right to testify in his own defense because he was delusional, but that he was competent to stand trial notwithstanding his delusions. For the reasons set forth above, this analysis was flawed under *Dusky* because it failed to consider the impact of defendant's delusions on the question of whether his perceptions and understandings were grounded in reality. Moreover, under prevailing standards regarding the validity of waivers, which are different from those governing a defendant's competency, it may well be that defendant's waiver was voluntary here. *See Roelker v. People*, 804 P.2d 1336, 1339 (Colo.1991) (holding that a defendant effectively waived his right to testify where the trial court provided a proper *Curtis* advisement and where there was no indication that the defendant did not fully understand his right to testify or that his decision not to testify was involuntary or usurped by his lawyer); *cf. Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (holding that coercive police activity is a necessary predicate to a finding that a confession is not "voluntary" within the meaning of

the Due Process Clause of the Fourteenth Amendment). We need not decide whether defendant's waiver was voluntary here, however, because, as noted, the questions of the validity of a waiver and of a defendant's competency are separate inquiries, and we view the question before us as one of competency.[1] This question, in turn, requires us to decide if defendant was competent to make the decision as to whether or not to testify in his own defense and, if not, whether that inability rendered him incompetent to stand trial. We have addressed the standards governing the first question. We now turn to those governing the second.

■ It is well settled that a defendant has a constitutional right to testify in his own defense under the Due Process Clauses of the United States Constitution, amend. XIV, and the Colorado Constitution, art. II, § 25. *See Curtis*, 681 P.2d at 509–11. Indeed, our supreme court has held that this right to testify "is so fundamental that the effectiveness of its waiver must be tested by the same constitutional standards applicable to waiver of the right to counsel." *Id.* at 512. In addition, "the decision whether a defendant should exercise his right to testify [is] one of such compelling importance that it is excluded from the group of constitutionally based rights that defense counsel can elect to exercise or waive on the behalf of the accused." *Id.* Thus, the decision whether to testify is one of those very few trial decisions that belong to the defendant alone. *Id.*

■ Although the parties have cited no case addressing the precise issue before us, namely, whether a defendant who is incompetent to decide whether to exercise or waive the right to testify is necessarily incompetent to stand trial, the Second Circuit addressed an analogous question in *Hemsi*, 901 F.2d at 296. In *Hemsi*, the court considered a defendant's Sixth Amendment right to be present throughout his felony trial, which, like the right to testify, is a fundamental right that belongs exclusively to the defendant. *Penney v. People*, 146 Colo. 95, 101, 360 P.2d 671, 673 (1961); *People v. Davis*, 851 P.2d

1. For this reason, we disagree with defendant's assumption that the involuntariness of a waiver necessarily determines the question of a defendant's competency.

239, 243 (Colo.App.1993). The *Hemsi* court stated that if a defendant misbehaves at trial to such an extent that his conduct is unduly disruptive and would ordinarily require his removal from the courtroom, but the defendant's conduct resulted from a mental disease or defect and was beyond his rational control, the court would be forced to suspend or abort the trial. *Hemsi,* 901 F.2d at 296.

Thus, *Hemsi* makes clear that a trial cannot proceed if a defendant's mental disease or defect renders him incompetent to decide whether to exercise his fundamental right to be present at trial, which only he could do. We believe that the same analysis applies here and thus conclude that defendant's trial could not properly proceed if his mental disease or defect prevented him from deciding rationally whether to exercise his fundamental and personal right to testify in his own defense in a manner consistent with the *Dusky* standard (requiring both a present factual and rational understanding of the proceedings). *See Morino,* 743 P.2d at 51. Specifically, if defendant's mental disease or defect rendered him incapable of deciding rationally whether to testify, then, because of the nature of that right, he necessarily lacked the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and the requisite factual and rational understanding of the proceedings against him. *Id.*

We reject the prosecution's suggestion that even if defendant was incompetent to decide whether to testify, he has failed to show prejudice. If defendant was in fact incompetent, reversal is required because we conclude that the trial of an incompetent defendant constitutes structural error.

 " '[S]tructural error[ ]' is a 'structural defect [ ] affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself,' and requires automatic reversal." *Blecha v. People,* 962 P.2d 931, 942 (Colo.1998) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). "[T]rial error," by contrast, "occurs 'during the presentation of the case to the jury and . . . may therefore be quantitatively assessed in the context of other evidence presented in

order to determine whether its admission was harmless beyond a reasonable doubt.' " *Id.* (quoting *Fulminante,* 499 U.S. at 307–08, 111 S.Ct. 1246). Structural errors render the trial process fundamentally unfair, and because the nature of such errors is necessarily unquantifiable and indeterminate, we do not review them in the context of the evidence in the record. *People v. Dunlap,* 975 P.2d 723, 737 (Colo.1999). Regardless of "whether the error occurs throughout the trial or during a single critical stage, the dispositive factor remains whether or not the error can be quantified." *People v. Boykins,* 140 P.3d 87, 94 (Colo.App.2005).

The United States Supreme Court has found that the following errors are structural in nature: denial of the right to a jury verdict of guilt beyond a reasonable doubt, *Sullivan v. Louisiana,* 508 U.S. 275, 281–82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); a total deprivation of the right to counsel, *Fulminante,* 499 U.S. at 309, 111 S.Ct. 1246 (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)); the lack of an impartial trial judge, *id.* (citing *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)); discrimination on the basis of race in the selection of grand jurors, *Vasquez v. Hillery,* 474 U.S. 254, 263–64, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); violation of the right to self-representation at trial, *McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); and violation of the right to a public trial, *Waller v. Georgia,* 467 U.S. 39, 49–50, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984).

 Here, we conclude that the effect of erroneously allowing an incompetent defendant to stand trial is also unquantifiable and indeterminate. Accordingly, in our view, such an error is consistent with the types of errors that the Supreme Court has deemed "structural" and requires automatic reversal. *See Rohan ex rel. Gates v. Woodford,* 334 F.3d 803, 818 (9th Cir.2003) ("If a court holds an entire trial while a defendant is incompetent, we don't review for harmless error by speculating what the defendant might have said had he been able. The error is structural; it 'contaminate[s] . . . the entire . . . proceeding' and 'any inquiry into its effect on

the outcome of the case would be purely speculative.'") (quoting *Satterwhite v. Texas,* 486 U.S. 249, 256–57, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988)).

In light of the foregoing, a remand is necessary to allow the trial court to determine the question of defendant's competence in light of the standards set forth in this opinion. Specifically, on remand, the trial court must decide, on the record before it, whether, as a matter of fact, defendant proved by a preponderance of the evidence that he suffered from a mental disease or defect that rendered him unable to decide whether to testify with a then-present factual and rational understanding of that decision and its consequences. If he did, then defendant was incompetent to make the decision as to whether or not to testify, and, subject to the parties' rights to appeal that determination, the court shall order a new trial at such time as defendant is competent to stand trial. If not—as, for example, if the court finds by a preponderance of the evidence that defendant was malingering—then, subject to defendant's right to appeal that determination, the court shall find (1) that defendant was competent to stand trial and (2) that he knowingly, voluntarily, and intelligently waived his right to testify (because the sole basis for the court's doubt as to the validity of defendant's waiver was its belief that defendant may have been delusional, a concern that would no longer exist if the court finds that defendant was competent).

## III. Sufficiency of Evidence of Burglary

Defendant next claims that his burglary convictions must be vacated because the evidence was insufficient to prove that his entry into the victim's apartment was unlawful. In particular, defendant argues that because he was allowed into the victim's apartment building by a resident, he did not enter the building unlawfully for purposes of the burglary statutes. Because a finding in favor of defendant on this issue would prohibit the state, under double jeopardy principles, from trying him again on the burglary charges, *see People v. Sisneros,* 44 Colo.App. 65, 67, 606 P.2d 1317, 1319 (1980), we address defendant's challenge, and we reject it.

When assessing the sufficiency of the evidence in support of a guilty verdict, we determine whether any rational trier of fact might accept the evidence, when taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the defendant's guilt beyond a reasonable doubt. *People v. Sprouse,* 983 P.2d 771, 777 (Colo.1999).

As applicable here, section 18–4–202(1), C.R.S.2008, states:

A person commits first degree burglary if the person knowingly enters unlawfully, or remains unlawfully after a lawful or unlawful entry, in a building or occupied structure with intent to commit therein a crime ... against another person or property, and if in effecting entry or while in the building or occupied structure or in immediate flight therefrom, the person ... assaults or menaces any person....

Under section 18–4–203(1), C.R.S.2008, "[a] person commits second degree burglary, if the person knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully after a lawful or unlawful entry in a building or occupied structure with intent to commit therein a crime against another person or property."

Although a defendant does not commit burglary when he enters or remains in a building with license, invitation, or privilege to do so, *see People v. Germany,* 41 Colo.App. 304, 308, 586 P.2d 1006, 1009 (1978), *rev'd on other grounds,* 198 Colo. 337, 599 P.2d 904 (1979), "[a] general grant of authority or license to enter a part of a building does not necessarily include the right to enter subunits or other parts of the building." *People v. Barefield,* 804 P.2d 1342, 1345 (Colo.App.1990). In determining whether a defendant has committed burglary, the focus is upon the possessory rights of the victim, not on ownership rights based on legal title. *Id.* Thus, "any rightful possession of a premises creates sufficient 'ownership' or possessory interest in the property such that an unlawful entry constitutes a burglary committed against the person with that interest." *Id.* (upholding a defendant janitor's burglary conviction where he entered the

office of a county attorney who had authority to restrict defendant's access to his office, even though the defendant was rightfully in the building); *see also People v. Lopez*, 946 P.2d 478, 485–86 (Colo.App.1997) (burglary of mother's bedroom by child living in the home, where child not permitted in that room); *Germany*, 41 Colo.App. at 308–09, 586 P.2d at 1009 (burglary of a patient's hospital room).

In light of the foregoing principles, we conclude that the evidence here, when viewed in the light most favorable to the prosecution, supports defendant's burglary convictions. Specifically, the owner of the victim's residence testified that it was "like a boarding house" with twelve rental rooms and shared bathroom and kitchen areas. The victim testified that his apartment contained a bed, dresser, television, and stereo and that he normally locked both of the doors to his room. A neighbor of the victim stated that visitors usually knocked at an outside door until one of the tenants let them in so that they could then knock on an individual's door within the building. This neighbor further testified that on the night of the attack, he saw defendant standing outside, and defendant told him that he was there to see the victim. According to the neighbor, he then let defendant inside the building, showed him where the victim lived, and then heard him knock on the victim's door. Finally, at trial, the parties stipulated that on the night in question, the victim did not give anyone, including defendant, permission to enter his room.

We conclude that these facts were sufficient to allow a reasonable fact finder to determine that the victim had a possessory interest in his apartment, that defendant entered the victim's apartment without permission, and that, for purposes of the burglary statutes, defendant entered a building or occupied structure unlawfully. Accordingly, defendant may properly be retried on the burglary charges. Should defendant be convicted again of both first and second degree burglary, however, because second degree burglary is a lesser included offense of first degree burglary, the second degree burglary conviction would merge into the first degree

burglary conviction. *Armintrout v. People*, 864 P.2d 576, 581–82 (Colo.1993).

### III. Challenge of Juror T.H. for Cause

■ Finally, defendant argues that the court erred in denying his challenge for cause of Juror T.H., who had an aversion to blood. Specifically, defendant contends that Juror T.H. should have been stricken because he would not properly have been able to evaluate the evidence in this case, which involved a victim who was stabbed numerous times and graphic crime scene photos and testimony. Because the trial court on remand might determine, by application of the appropriate legal standards, that defendant was competent to stand trial, we address defendant's contention, and we reject it.

We review a trial court's ruling on a challenge for cause for an abuse of discretion. *Carrillo v. People*, 974 P.2d 478, 485 (Colo. 1999). This is "a very high standard of review," giving deference to the trial court's assessment of potential jurors' credibility. *Id.* at 485–86. A trial court's determination regarding a challenge for cause will only be overturned if the record presents no basis to support it. *People v. Pigford*, 17 P.3d 172, 177 (Colo.App.2000).

■ A person with a disability is obligated to serve on a jury if selected unless the court finds that his disability prevents him or her from performing the duties and responsibilities of a juror. § 13–71–104(3)(b), C.R.S. 2008. "When there is a challenge based upon physical disability, a trial court has discretion to determine whether the challenged juror can adequately perform." *Pigford*, 17 P.3d at 177.

In *Pigford*, 17 P.3d at 177, a division of this court concluded that a trial court did not abuse its discretion by denying a defendant's challenge for cause of a prospective juror who was hearing impaired where, although during voir dire, the juror had trouble hearing on one occasion, the court asked him if he thought he was going to have difficulty hearing the proceedings, and he responded, "Probably not, no."

Here, as in *Pigford*, we conclude that the trial court did not abuse its discretion in

denying defendant's challenge for cause. Juror T.H. indicated that he had been "squeamish about blood," that he had previously fainted while watching a movie about eye surgery, and that he felt numb throughout his body when he heard that this case would involve evidence of serious injuries, bleeding, and stab wounds. Nonetheless, when the court asked T.H. whether he would be able to consider the evidence in the case, including photographs, he stated, "I think I'd be able to consider it." Further, when the court asked him whether such evidence would make him so uncomfortable that he might lose focus for a while, he said, "No. I don't think so." Under these facts, we conclude that the trial court did not abuse its discretion in denying defendant's challenge for cause.

## IV. Conclusion

For these reasons, this case is remanded to the trial court with directions that the court determine defendant's competence to stand trial in accordance with the principles set forth in this opinion. Should the court determine that defendant was not competent to stand trial in accordance with these principles, subject to the parties' rights to appeal that determination, the court shall order a new trial at such time as defendant is competent to stand trial. Should the court determine, however, that defendant was competent to stand trial in accordance with the principles set forth herein, then, subject to defendant's right to appeal, the judgment shall stand affirmed.

Judge RUSSEL and Judge J. JONES concur.