**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Patricia Jagielski RAGUSA, Defendant–Appellant.**

**No. 06CA1110.**

Colorado Court of Appeals, Div. V.

Sept. 3, 2009.

Rehearing Denied Nov. 5, 2009.

John W. Suthers, Attorney General, Rebecca A. Adams, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RICHMAN.

Defendant, Patricia Jagielski Ragusa, directly appeals the judgments of conviction and sentences entered on jury verdicts finding her guilty of theft, attempted theft, computer crime, and attempted computer crime. We reverse the judgments, vacate the sen-

tences, and remand the case for further proceedings.

## I. Facts and Procedural History

The prosecution charged defendant with fifty-one counts of theft and attempted theft in violation of section 18–4–401(1), (2)(c), and (2)(d), C.R.S.2008, and fifty-one counts of computer crime and attempted computer crime in violation of section 18–5.5–102(1)(b), C.R.S.2008, for stealing and attempting to steal approximately $1.2 million from her employer via wire transfers she made by computer.

### A. In Camera Proceedings

Defendant's contentions on appeal are based on statements her privately-retained attorneys made, in her absence, to the trial court and the prosecutors during two in camera proceedings.

#### 1. First In Camera Proceeding

Before jury selection and in defendant's absence, the trial court held an in camera proceeding on the record, initiated at the request of defendant's attorneys, with defendant's attorneys and the prosecution. During this proceeding, defendant's attorneys discussed the district attorney's plea bargain offers to defendant. They revealed discussions in which they had "advised [their] client to take [the offers] unconditionally," and explained that they had "met with [defendant] repeatedly and were very adamant that [they] felt she should take [the district attorney's plea bargain]" to achieve "a [sentence] range of between four to twelve [years]."

Defendant's attorneys also made the following statements: (1) "[Defendant] led [us]—and we advised the prosecution—to believe that she was going to take the deal," (2) "[W]e think that it's folly for [defendant] to not have taken the deal," (3) "[H]er decision [not to accept the deal] is flat out wrong," (4) "[H]er choice is just a very, very poor one," and (5) "[W]e just feel it appropriate that we make a record." They also stated that they had advised defendant "in full and on multiple occasions," and that they had "steadfastly advised [their] client to accept the plea disposition." In response to defendant's attorneys' statements, the trial court found that defendant had "been advised on more than one occasion about [her potential sentence]" and that she had chosen to "go forward to trial."

Defendant's attorneys added, "[W]e have advised her that we will carry on with dignity," but "We will not act like we hate [the prosecution]." Further, they stated, "While we do buy into her pain, it doesn't mean that we're not going to be officers of the court and gentlemen." Finally, defendant's attorneys concluded by stating, "And we will not advise [defendant] of this [discussion] should she ask us what this was about. We don't think it was appropriate [sic]. It would only throw a monkey wrench thinking that we're against her."

#### 2. Second In Camera Proceeding

Following a recess during the prosecution's case-in-chief, the court held another in camera proceeding, again in defendant's absence, with defendant's attorneys and the prosecution. Defendant's attorneys revealed that during the recess they were subjected to "perhaps the most vicious attack [they had] ever had to get from a client," quoting her telling them that they "don't give a s——, don't give a f——, and [are] putting on a patsy defense."

Defendant's attorneys also stated that they "need[ed] to put it on the record, because ... [defendant] seems to be trying to make [them] a target." They stated further, "[Defendant] is expressing that she may not want us continuing to represent her," and "She said that we would not be able to work together if this was the way that it's going to continue with our defense." The court inquired whether defendant's attorneys were referring to this case or some case in the future, and they replied that they "[thought] she [was] referring to this case." The court asked whether defendant made "any more specific statements ... other than she was unhappy." Defendant's attorneys stated that the only other statements defendant made concerned particulars on the cross-examination of a prosecution witness.

Finally, at this same in camera proceeding, defendant's attorneys stated, "[We] are certainly not going to quit. We're not going to let her fire us, if that ever were to come."

They also said, "But we just feel as officers of the Court ... we're very concerned that we're being set up." Without further inquiry, the court ended the in camera proceeding, and the trial resumed.

### B. Conviction and Grounds for Appeal

The jury found defendant guilty on all charges. Defendant did not move for new counsel during her trial, nor did she make a post-trial motion for relief from the conviction. However, she represents to this court, without dispute from the prosecution, that she only became aware of the substance of the in camera proceedings after her conviction, when she reviewed the record in connection with her appeal. She requests reversal of her conviction and sentence on direct appeal due to violations of her Sixth Amendment rights to (1) have conflict-free counsel, (2) be present at trial, and (3) have counsel of her choice.

### II. Conflict–Free Counsel

Defendant contends that her constitutional right to conflict-free counsel was violated when her trial attorneys undermined the attorney-client relationship by disclosing privileged communications and concealing the disclosure from her. She also argues that her attorneys labored under competing interests and loyalties because they wanted to keep the $100,000 that she paid them to litigate the trial while protecting their professional reputation and standing with the court and the district attorney's office. We agree that defendant's right to conflict-free counsel was violated.

A defendant has a right to conflict-free counsel. *People v. Harlan,* 54 P.3d 871, 878 (Colo.2002). Counsel becomes conflicted when his or her "ability to champion the cause of the client becomes substantially impaired." *Rodriguez v. Dist. Court,* 719 P.2d 699, 704 (Colo.1986); *see also People v. Edebohls,* 944 P.2d 552, 556 (Colo.App.1996) (conflict exists when attorney's ability to represent client is materially limited by attorney's own interests to avoid prosecutor taking " 'umbrage at a vigorous defense' of defendant" (quoting *People v. Castro,* 657 P.2d 932, 945 (Colo.1983))).

An actual conflict of interest is one that is real and substantial, whereas a potential conflict is one that is possible or nascent, but in all probability will arise. *Harlan,* 54 P.3d at 878. "In order to demonstrate a violation of his [or her] Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his [or her] lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). However, "a defendant who shows that a conflict of interest actually affected the adequacy of his [or her] representation need not demonstrate prejudice in order to obtain relief." *Id.* at 349–50, 100 S.Ct. at 1719; *see also People v. Miera,* 183 P.3d 672, 677 (Colo.App.2008) (concluding that *Cuyler* provides the appropriate standard to analyze an ineffective assistance of counsel claim based on a conflict of interest); *People v. Kelling,* 151 P.3d 650, 657 (Colo.App.2006) ("Where, as here, the trial court neglects to inquire into a potential conflict, a defendant, to obtain reversal, must show that counsel was subject to an actual conflict of interest that adversely affected counsel's performance on behalf of the defendant.").

Defendant argues that her attorneys' personal and financial interests presented an actual conflict with their duties of loyalty, zealous advocacy, and confidentiality. We agree that the actual conflict of interest between defendant and her counsel adversely affected her attorneys' performance because, as explained below, it resulted in her own counsel contributing to the deprivation of her constitutional rights. The cumulative effect of these attorneys' willingness to reveal matters to the court and prosecutors, while keeping the same matters secret from their client, was that defendant was denied the rights to meaningfully exercise her choice of counsel, be present at all critical stages of the proceedings, and make an intelligent and informed choice of whether to continue with counsel when a conflict appeared, as well as her entitlement to zealous and loyal advocacy.

### A. Breach of Attorney–Client Privilege

The attorney-client privilege protects communications "by or to the client in

the course of gaining counsel, advice, or direction with respect to the client's rights or obligations" under circumstances giving rise to a reasonable expectation that the statements will be treated as confidential. *Gordon v. Boyles,* 9 P.3d 1106, 1123 (Colo.2000); *see also* Colorado Rules of Professional Conduct 1.6(a) (prior version effective until Jan. 1, 2008: "A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation . . ."; and substantially similar current version: "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent . . ."). The privilege is personal to the client, and only the client may waive it. *People v. Madera,* 112 P.3d 688, 690 (Colo.2005).

■ Here, defendant's attorneys shared privileged information with the prosecution and the trial court in the first in camera proceeding, when they announced that they had advised defendant "on more than one occasion" about her potential sentence, that they "were very adamant that [they] felt she should take [the plea bargain]," and that, in their assessment, her decision to proceed to trial was "folly." During the second in camera proceeding, defendant's attorneys repeated statements defendant made to them about the "patsy defense" they were presenting, which they characterized as a "vicious attack." They also expressed their concern that they were "being set up" and made a "target" by defendant.

We conclude that defendant's attorneys breached their duty to defendant by revealing these communications to the prosecution and to the court before and during the trial. This breach of duty is but one factor which evidences an actual conflict of interest between defendant and her counsel and the adverse effect the conflict had on their performance.

### B. Not a *Schultheis* Hearing

■ The first in camera proceeding was held at defendant's attorneys' request because they believed it was "appropriate to make a brief *Schultheis* record." In *People v. Schultheis,* 638 P.2d 8 (Colo.1981), however, the court was presented with an altogether different situation. That case deals with counsel's obligation to request to withdraw

when a client demands to present perjured testimony. *Id.* at 13. Here, the prosecution does not argue that defendant's attorneys believed that defendant intended to offer false testimony, nor did the attorneys conduct an independent investigation which would support such a belief on their part. *See id.* at 11. Further, defendant's attorneys never moved to withdraw, nor did they suggest that defendant was planning to offer perjured testimony. In short, this was not a *Schultheis* hearing.

Our review of the record persuades us that defendant's attorneys cited *Schultheis* as a pretext to obtain an in camera hearing and, for some reason not discernable from the record, proceeded to relay to the trial court and the prosecution their belief that defendant should have accepted the prosecution's plea bargain and their frustration with her for not having done so. This conduct by defendant's attorneys shows that they and defendant were in conflict in ways that go beyond differences of opinion as to matters of trial strategy or the strength of defendant's case, *see Kelling,* 151 P.3d at 653, or animosity between them, *see People v. Hodges,* 134 P.3d 419, 425 (Colo.App.2005) (animosity between defendant and attorneys concerning strength of case does not constitute an actual conflict of interest), *aff'd,* 158 P.3d 922 (Colo.2007). Defendant's attorneys "actively represented conflicting interests" by making a record which could be used in their favor and against defendant in some unspecified proceeding that they anticipated would later occur. *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719.

### C. Pretextual In Camera Hearings— Lack of Disclosure

In addition, by using a pretext to obtain the in camera proceedings and concealing the substance of those proceedings from defendant, defendant's attorneys prevented her from knowingly and intelligently exercising her right to conflict-free counsel. At the conclusion of the first proceeding, defendant's attorneys stated on the record that they would not divulge the substance of the proceeding to defendant, in part because it would reveal the conflict of interest, stating:

"And we will not advise [defendant] of this should she ask us what this was about. We don't think it was appropriate [sic]. It would only throw a monkey wrench thinking we're against her."

Defendant's attorneys instigated the second in camera proceeding using as a justification a potential sequestration violation: "Judge, a most fortuitous situation happened that under the guise of calling back to talk to us about a question, a sequestration potential violation, that gave us an opportunity to come into chambers so [we] can report what just happened during the break." Defendant's attorneys went on to disclose verbatim privileged communications defendant made to them earlier and make a record of their concern that they were being "set up" by defendant.

In *Edebohls,* a division of this court set forth the proper procedure for addressing potential conflicts that may arise at trial:

> Once a potential conflict of interest becomes reasonably apparent, defense counsel has a duty to advise the defendant of the nature of the conflict and, in plain terms, to describe the specific ways in which the conflict may affect his or her ability to represent the defendant effectively at various stages of the case. Defense counsel should then place on the record the potential conflict of interest and should further advise the court that as complete a disclosure as possible has been made to the defendant.

944 P.2d at 556.

Here, the conflict was readily apparent— enough so that defendant's attorneys felt obliged to obfuscate their reasons for meeting with the court in camera—and thus, the duty to advise defendant about the nature of the conflict arose. Further, there can be no suggestion that defendant's attorneys made "as complete a disclosure as possible." *Id.* Nor did the trial court make an inquiry into the potential conflict or "seek from the defendant a narrative response, on the record, indicating his or her understanding of the right to conflict-free representation and a description of the conflict at issue" while "actively seek[ing] to clarify any confusion the defendant may have about the advisement." *Id.* Defendant's attorneys' failure to advise defendant about the nature of the

conflict of interest provides additional support for our conclusion that defendant's right to conflict-free counsel was violated in this case.

### D. "We're Not Going to Let Her Fire Us"

Defendant was further prevented from exercising her Sixth Amendment rights by her attorneys' stated intention of not letting her fire them. Thus, although defendant still had the right to choose her counsel, it was her attorneys' stated intent to prevent her from acquiring conflict-free counsel.

The prosecution argues that defendant had the opportunity to express any concerns about her attorneys but failed to do so. During her *Curtis* advisement, the trial court asked defendant if she felt that she had been effectively represented by her counsel, and she replied, "Absolutely, yes." *See generally People v. Curtis,* 681 P.2d 504 (Colo.1984) (trial court has duty to question defendant on record to ascertain whether defendant will testify or waive right to testify, and any waiver of right to testify must be made with complete understanding of rights). When asked to confirm that she felt her attorneys were effectively representing her, she said, "I have great attorneys." At the conclusion of the *Curtis* advisement the court found that defendant indicated that "she knows exactly what is going on" and "that she has competent and effective counsel."

However, even though defendant failed to object to her attorneys' representation in the context of a *Curtis* advisement, we conclude that she could not have knowingly or intelligently waived the right to conflict-free representation because her attorneys concealed their disclosures to the court and the nature of the representation they provided her. *See Edebohls,* 944 P.2d at 557 ("A waiver of the right to conflict-free counsel must be made voluntarily, knowingly, and intelligently.").

Therefore, we conclude that the cumulative effect of several factors created an actual conflict of interest that adversely affected the attorneys' performance. Because of the presence of the actual conflict of interest, we cannot conclude that defendant received a fair trial, and reversal is required. As additional grounds for reversal, we address de-

fendant's other two claims in a more abbreviated fashion.

## III. Right to Be Present at Trial

■ Defendant contends that her right to be present at her trial was violated when the trial court held in camera proceedings in her absence during which her attorneys discussed her potential desire to terminate their representation and repeatedly disclosed damaging and attorney-client privileged information. We agree.

■ A defendant has a right to be present at every critical stage of his or her criminal trial. *People v. Harris*, 914 P.2d 434, 437 (Colo.App.1995); *see also Luu v. People*, 841 P.2d 271, 275 (Colo.1992) (due process requires that the defendant be allowed to be present at trial to the extent that a fair and just hearing would be thwarted by his or her absence). "However, due process does not require the defendant's presence when it would be useless or only slightly beneficial." *People v. Isom*, 140 P.3d 100, 104 (Colo.App.2005).

■ We apply harmless error analysis to claims of denial of a defendant's right to be present at trial. *People v. Boykins*, 140 P.3d 87, 94 (Colo.App.2005) (citing *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983)). If a review of the entire record demonstrates a reasonable probability that the defendant could have been prejudiced by the error, the error cannot be harmless. *Key v. People*, 865 P.2d 822, 827 (Colo.1994).

■ Here, if defendant had been present at the in camera proceedings, she could have objected to her attorneys' disclosure of privileged information concerning the plea agreements, corrected misstatements (if any), or fired them. Thus, cases where the defendant's presence would have been useless, or superfluous to counsel's presence, are inapposite. *See, e.g., Isom*, 140 P.3d at 104 (no right to be present when court decided to allow jury to review a videotape); *see also Esnault v. Colorado*, 980 F.2d 1335 (10th Cir.1992) (no right to be present when court responded to jury's question during deliberations).

The prosecution argues that the in camera proceedings were not "critical" because no motions or rulings were made and defendant's presence would have been of "nebulous" benefit to her. Although we are aware of no Colorado case precisely on point, the reasoning in *Key*, 865 P.2d at 825, is pertinent here. We conclude that in this case defendant's right to be present is analogous to a defendant's right to counsel analyzed in *Key*.

The *Key* court stated, "Stages of criminal proceedings have been held to be 'critical' where there exists more than a 'minimal risk' that the absence of the defendant's counsel might impair the defendant's right to a fair trial." *Id.* There, the trial court held an impromptu scheduling conference with the jury during its deliberations. *Id.* Although no rulings or motions were made during the conference and the discussion was purportedly confined to "scheduling" matters, the supreme court concluded that because the content of the communications indicated that at least two of the jurors had substantial incentives to arrive at a verdict that afternoon, the conference created more than a minimal risk that the defendant's right to a fair trial was impaired by his counsel's absence. *Id.; see also State v. Mann*, 332 Mont. 476, 139 P.3d 159, 163 (2006) (the crux of what defendant missed by being excluded from hearing was not the court's comments but those of his own attorney, who expressed "his personal biases against [the defendant] and his very negative perception of his own client").

Similarly, based on the content of the communications that took place here, defendant's absence created a risk that her right to a fair trial was impaired. Her inability to hear the discussion between her counsel and the court rendered her subsequent comments regarding her satisfaction with counsel "both unintelligent and uninformed." *Mann*, 139 P.3d at 163. We conclude that the in camera proceedings were "critical" and that defendant's absence was not harmless beyond a reasonable doubt. Thus, reversal is required on this ground as well.

## IV. Counsel of Choice

■ Finally, defendant contends that she was effectively denied her constitutional right to counsel of choice because she was

"left in the dark about the way her attorneys perceived her and the way they were willing to publish their perceptions to the court and the prosecutors." Again, we agree.

 The denial of a defendant's constitutional right to counsel of his or her choice is structural error. *See United States v. Gonzalez–Lopez,* 548 U.S. 140, 150, 126 S.Ct. 2557, 2564, 165 L.Ed.2d 409 (2006) (Sixth Amendment commands that the accused be defended by counsel he or she believes to be best, and the erroneous deprivation of the right to counsel of choice is structural error). "A choice-of-counsel violation occurs *whenever* the defendant's choice is wrongfully denied." *Id.* at 150, 126 S.Ct. at 2565 (emphasis in original). Where the right to be assisted by counsel of one's choice is wrongfully denied, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. *Id.* at 148, 126 S.Ct. at 2563.

Here, even though defendant, unlike the defendant in *Gonzalez–Lopez,* did not move for the entry of a particular counsel or expressly object to her counsel during trial, her attorneys purposefully kept her ignorant of the nature of the in camera proceedings and the disclosure of privilege information they made during such proceedings. The attorneys' conduct, which was compounded by the court permitting defendant to be excluded from the proceedings, effectively and wrongfully deprived her of a knowing exercise of her choice of counsel. Because denial of this right is structural error, it does not require a showing of prejudice. Hence, reversal is required on this ground as well.

### V. Conclusion

Because defendant's Sixth Amendment rights were violated, her judgments of conviction are reversed, her sentences are vacated, and her case is remanded for a new trial.

GRAHAM and ROVIRA *, JJ. concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.