21CA2042 Peo v Grubb 12-12-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 21CA2042
El Paso County District Court No. 18CR793
Honorable Deborah J. Grohs, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Antoinette Michelle Grubb,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE KUHN
Yun and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 12, 2024

---

Philip J. Weiser, Attorney General, Frank R. Lawson, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Rachel C. Funez, Alternate Defense Counsel, Glenwood Springs, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Defendant, Antionette Michelle Grubb, appeals her conviction for violation of a custody order.  We affirm.

## I.     Background

¶ 2     Grubb was married to Ivan Kazay, and together they had a child, D.G.  After their marriage ended, the domestic relations court designated Kazay as D.G.'s primary parent, with Grubb having parenting time every other weekend during the school year and rotating weeks during the summer.  Additionally, in an order issued right before the 2017 Christmas holiday, the domestic relations court awarded Grubb parenting time with D.G. for the first week of the Christmas break.  It ordered that Kazay's parenting time would start at noon on Christmas Day and would continue through the remainder of the holiday.

¶ 3     Grubb did not return D.G. to Kazay on Christmas Day.  She testified at trial that she did not do so because she felt like D.G. was in danger.  That same day, Grubb filed a police report alleging that Kazay abused D.G.  The responding officer initiated a case report and explained to Grubb that she needed to follow up with the court for temporary custody orders.  Grubb did not file a motion or

make a report to the domestic relations court either through counsel or pro se.

¶ 4     Grubb then withheld D.G. from attending school for the month after Christmas, and Kazay filed a complaint with the police in late January. Detective Brad Krause and an El Paso County Department of Human Services caseworker contacted Grubb, who stated that she was keeping D.G. safe and did not care about violating the court order. Grubb also explained that she did not contact the police because she was scared of them and did not want D.G. to return to Kazay.

¶ 5     At Detective Krause's request, Grubb scheduled a forensic interview for D.G. with the detective to investigate the child abuse allegations. However, she failed to bring D.G. to the interview. Detective Krause offered to reschedule, and Grubb agreed to conduct an interview the following morning. But Grubb also failed to show up for the second interview.

¶ 6     After the missed interviews, Detective Krause contacted D.G.'s school and spoke with the principal, who informed him that D.G. had not attended school since December 15 and that Grubb "approached her staff a few weeks ago, made outrageous

2

accusations towards Mr. Kazay and stated [D.G.] would not be at school." Grubb was then arrested and charged with violating a custody order under section 18-3-304, C.R.S. 2024.

¶ 7 During the pretrial proceedings, the trial court held a hearing on Grubb's "choice of evils" affirmative defense under section 18-1-702(2), C.R.S. 2024. The trial court ruled that Grubb had not met her burden to demonstrate "whether the claimed facts and circumstances would, if established, constitute a justification [for choice of evils]." § 18-1-702(2). After the hearing, Grubb expressed her frustration with her counsel, including communication issues and confusion regarding the choice of evils defense. Subsequently, the court held a conflict hearing during which Grubb changed her position and expressed satisfaction with her counsel.

¶ 8 Approximately a month later, Grubb's pretrial defense counsel filed a motion raising concerns about Grubb's competency. Counsel argued that "Grubb has what appears to be delusional expectations and a delusional vision for her cases" and that "Grubb's memory of conversations and interactions with defense counsel is inaccurate and also appears to be delusional."

¶ 9    The trial court advised Grubb and requested a competency evaluation.  Dr. Christina Gliser conducted an evaluation in October 2019, and opined that

> Grubb does not currently have a mental disability or developmental disability that prevents her from having sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding in order to assist in her defense, or prevents her from having a rational and factual understanding of the criminal proceedings.

Grubb did not challenge the results of this determination.

¶ 10    Not long after the evaluation, a new public defender took over the case.  Grubb then started to express challenges regarding communication with her new counsel.  She also continued to express confusion about witnesses and evidence, along with her prior counsel's handling of the choice of evils defense.  The week before trial, the court held another conflict hearing where it determined that there was no conflict but instead a lack of communication between Grubb and her attorney.  As a result, the court ordered Grubb and her new counsel to meet with each other.

¶ 11    The matter proceeded to trial, and on the first day, Grubb's counsel raised Grubb's concerns again.  The trial court found that

these continuing concerns were a misunderstanding regarding trial strategy rather than competing interests between Grubb and her counsel. The court determined that Grubb continued to have concerns about communication and witnesses throughout the trial.

¶ 12    At the conclusion of trial, Grubb was convicted of violating the custody order and sentenced to twenty-four months of supervised probation.

## II.    Analysis

¶ 13    Grubb contends that the trial court (1) violated her right to conflict-free counsel and (2) was required to sua sponte stop the trial and order a new competency evaluation. We address each contention in turn.

### A.    Conflict-Free Representation

¶ 14    Grubb contends that the trial court violated her Sixth Amendment right to conflict-free counsel. We disagree.

#### 1.    Standard of Review and Applicable Law

¶ 15    We review de novo whether an actual conflict of interest existed. *People v. Deutsch*, 2020 COA 114, ¶ 13; *People v. Lopez*, 2024 CO 50, ¶ 29.

¶ 16    "The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense.'" *Ronquillo v. People*, 2017 CO 99, ¶ 15 (quoting U.S. Const. amend. VI); *see also* Colo. Const. art. II, § 16.  And "[t]he right of effective assistance of counsel includes the right to conflict-free representation by counsel." *People v. Martinez*, 869 P.2d 519, 524 (Colo. 1994).

¶ 17    Generally, "a conflict of interest exists when: (1) an attorney's representation of one client is directly adverse to another client, [or] (2) when the attorney's ability to represent a client is materially limited by the attorney's responsibility to another client or to a third person, or by the attorney's own interests." *People v. Edebohls*, 944 P.2d 552, 556 (Colo. App. 1996) (citing Rules of Professional Conduct 1.7(a) and (b)), *overruled on other grounds by Lopez*, ¶ 3. "Conflicts are categorized as either actual or potential.  An actual conflict of interest is one that is 'real and substantial,' whereas a potential conflict is one that is 'possible,' is 'nascent,' or 'in all probability will arise.'" *People v. Kelling*, 151 P.3d 650, 657 (Colo. App. 2006) (quoting *People v. Harlan*, 54 P.3d 871, 878 (Colo. 2002)).

¶ 18    In reviewing a challenge based on a conflict of interest, we

"must first determine whether the case falls within one of the few

scenarios that the [United States] Supreme Court has said support

a presumption of prejudice." *Lopez,* ¶ 45.  A presumption of

prejudice exists when

> (1) the trial court summarily rejected a pretrial
> motion from defense counsel alleging a
> conflict; (2) the defendant was completely
> denied counsel at a critical stage of the
> proceedings; (3) counsel completely failed to
> subject the prosecutor's case to meaningful
> adversarial testing; or (4) the circumstances
> were such that no counsel could render
> effective assistance of counsel.

*Id.*

¶ 19    If none of these scenarios applies, "a defendant must show by

a preponderance of the evidence both a conflict of interest *and* an

adverse effect resulting from that conflict."  *Id.* at ¶ 42 (quoting

*West v. People*, 2015 CO 5, ¶ 65).  A defendant who establishes a

conflict of interest and an adverse effect on the representation

resulting from that conflict does not need to show further prejudice

to obtain relief.  *See id.* at ¶ 45.

7

## 2. Grubb Has Not Demonstrated an Actual Conflict or an Adverse Effect

¶ 20    Grubb argues that an actual conflict developed when trial counsel contradicted Grubb on the record in open court and disclosed privileged communications and trial strategy to defend counsel's representation of Grubb.

¶ 21    As an initial matter, we note that Grubb's allegations do not fall into any of the scenarios mandating automatic reversal.  Thus, we first turn to whether Grubb demonstrated a conflict of interest.  *See id.*

¶ 22    Grubb argues that on the first day of her trial, she raised the issue of ineffective assistance of counsel with the court.  She says that in response, her trial counsel defended counsel's own actions at Grubb's expense, breaching the attorney-client privilege and leading to an actual conflict.  Grubb compares her trial counsel's actions to those of the attorneys in *People v. Ragusa*, 220 P.3d 1002, 1006 (Colo. App. 2009), and *People v. Delgadillo*, 2012 COA 33, ¶ 11, and argues that these cases control the outcome here.  We review each of these cases before turning to the facts of the matter before us.

¶ 23    In Ragusa,

> defendant's attorneys shared privileged information with the prosecution and the trial court in the first in camera proceeding, when they announced that they had advised defendant "on more than one occasion" about her potential sentence, that they "were very adamant that [they] felt she should take [the plea bargain]," and that, in their assessment, her decision to proceed to trial was "folly." During the second in camera proceeding, defendant's attorneys repeated statements defendant made to them about the "patsy defense" they were presenting, which they characterized as a "vicious attack." They also expressed their concern that they were "being set up" and made a "target" by defendant.

220 P.3d at 1007.

¶ 24    The *Ragusa* court found that the defendant's attorneys relied on *People v. Schultheis*, 638 P.2d 8 (Colo. 1981), "as a pretext to obtain an in camera hearing and, for some reason not discernable from the record, proceeded to relay to the trial court and the prosecution their belief that defendant should have accepted the prosecution's plea bargain and their frustration with her for not having done so." *Ragusa*, 220 P.3d at 1007. Based on those events, the division concluded that "[t]his conduct by defendant's attorneys shows that they and defendant were in conflict in ways

9

that go beyond differences of opinion as to matters of trial strategy or the strength of defendant's case, or animosity between them." *Id.* (citations omitted). The *Ragusa* division ultimately concluded that the cumulative effect of several factors, including counsel trying to prevent the defendant from firing them, created an actual conflict of interest that adversely affected the attorneys' performance. *See id.* at 1008.

¶ 25　*Delgadillo*'s facts are even more dramatic. There, the court conducted an in camera proceeding during the trial and before the defense rested its case. *Delgadillo*, ¶ 11. At the in camera proceeding, the court swore defense counsel in as a witness, and the prosecutor examined defense counsel about how he had advised the defendant, including whether defense counsel had rendered ineffective assistance. *Id.* at ¶¶ 13, 20.

¶ 26　However, during this proceeding "[n]o one asked defendant whether he would waive the attorney-client privilege to allow his counsel to testify, or explained what the consequences might be if defense counsel testified inconsistently with defendant's trial testimony." *Id.* at ¶ 12. The division observed that "[t]his inquiry placed counsel in a position such that, regardless of whether he

rendered ineffective assistance, he apparently felt compelled to divulge attorney-client privileged information and defense strategy in order to justify the advice he gave to defendant." *Id.* at ¶ 21. The division then concluded that these actions created an actual conflict of interest. *Id.* at ¶ 25.

¶ 27     Grubb's situation is not factually analogous to *Ragusa* or *Delgadillo*. It is true that Grubb raised the specter of ineffective assistance of counsel, but the record before us indicates that her concerns about ineffective assistance spawned from the actions of her former attorney, who represented Grubb at the choice of evils hearing.

¶ 28     And while Grubb's counsel noted that "Grubb is still having the same concerns regarding counsel that she addressed with the Court last Thursday," we do not have a transcript containing those concerns. The information within the record regarding Grubb's Thursday concerns consists of a minute order stating that "[Grubb] raises issue of conflict with counsel; court hears testimony and finds no conflict" and a certification of the record recapping the trial court's determination. Neither of these portions of the record

11

details what Grubb actually raised at the conflict hearing, and there is no transcript that includes the contents of that hearing.

¶ 29 As the appellant, Grubb is responsible for providing an adequate record to demonstrate her claims of error. *See Egelhoff v. Taylor*, 2013 COA 137, ¶ 13. If she "fails to provide us with such a complete record, we must presume the correctness of the trial court's proceedings." *People v. Ullery*, 984 P.2d 586, 591 (Colo. 1999).

¶ 30 Grubb did not provide a transcript of the Thursday conflict hearing, and thus we must presume that — four days before trial — the trial court correctly determined there was no conflict of interest.

¶ 31 Additionally, the record before us does not demonstrate that Grubb's current attorney was placed in a position of defending her own actions during trial. Instead, trial counsel's comments to the court explained Grubb's struggles to understand why she could not use a specific defense at trial.

¶ 32 To the extent Grubb's counsel disclosed privileged or confidential information to the trial court and prosecutor, our review of the record demonstrates that these instances were primarily explaining Grubb's frustrations with prior counsel and

her inability to use the choice of evils defense, informing the court of advisements that she had given Grubb, giving the court context for Grubb's questions, and articulating Grubb's general frustrations. These explanations did expose some communications between Grubb and her counsel. But they were made in the context of explaining Grubb's statements and concerns to the trial court as she raised them. In other words, Grubb's counsel wasn't revealing her communications with Grubb for counsel's benefit. Instead, she was primarily using the communications to further explain her client's concerns to the court. Even if counsel did inappropriately disclose these communications without her client's consent, we don't see such disclosures as demonstrating a conflict of interest between counsel and her client.

¶ 33    Ultimately, the trial court determined that Grubb objected to her counsel's trial strategy. "Disagreements pertaining to matters of trial preparation, strategy, and tactics do not establish good cause for substitution of counsel." *Kelling*, 151 P.3d at 653; *see also People v. Garcia*, 64 P.3d 857, 864 (Colo. App. 2002) (determining that conflict between defendant and counsel was a disagreement over strategy, and thus did not require appointment

of new counsel). The record demonstrates that, unlike the facts in *Ragusa* and *Delgadillo*, Grubb's counsel was not primarily defending her earlier acts or omissions. *See Kelling*, 151 P.3d at 657. Instead, four days after the court determined there was no conflict, trial counsel explained the underpinnings of Grubb's continued concerns. Based on the record before us, we agree with the trial court's determination that this was primarily a disagreement over trial strategy.

¶ 34 Thus, Grubb hasn't shown that her counsel labored under an actual conflict of interest. Accordingly, her contention fails at the first stage of the *Lopez* and *West* tests. We thus discern no error in the trial court's ruling.

## B. Competency

¶ 35 Grubb also contends that the trial court erred by failing to sua sponte halt the proceedings and inquire into her competency to proceed at trial. We disagree.

### 1. Preservation

¶ 36 The People argue that Grubb failed to preserve this issue for review. "To preserve a claim, a party must make an objection 'specific enough to draw the trial court's attention to the asserted

14

error.'" *People v. Tallent*, 2021 CO 68, ¶ 12 (quoting *Martinez v. People*, 2015 CO 16, ¶ 14). However, "[w]hen a party presents a new argument or alters the grounds for an objection on appeal, the issue is forfeited and reviewable only for plain error." *Id.*

¶ 37 Grubb states that she preserved this issue when her counsel "informed the court on the first day of trial that [Grubb] had not understood [counsel's] advisements on various issues and did not know what the most recent plea offer was or understand the defense they were raising." But the entire thrust of Grubb's argument on appeal is that the trial court should have — on its own — raised the issue of competency. Her argument is based on the premise that she did not ask the trial court to evaluate her competency again. Thus, this issue was not preserved for appeal. *Id.* However, Grubb's "failure to raise this issue in the trial court does not preclude us from considering it as plain error on appeal." *People v. Kilgore*, 992 P.2d 661, 663 (Colo. App. 1999).

2. Applicable Law and Standard of Review

¶ 38 "Subjecting a defendant to trial when [she] is incompetent violates the defendant's right to due process." *People v. Mondragon,*

15

217 P.3d 936, 939 (Colo. App. 2009).  A defendant is "incompetent

to proceed" when,

> as a result of a mental disability or
> developmental disability, the defendant does
> not have sufficient present ability to consult
> with the defendant's lawyer with a reasonable
> degree of rational understanding in order to
> assist in the defense, or that, as a result of a
> mental disability or developmental disability,
> the defendant does not have a rational and
> factual understanding of the criminal
> proceedings.

§ 16-8.5-101(12), C.R.S. 2024; *see also Mondragon*, 217 P.3d at 939

(quoting *People v. Morino*, 743 P.2d 49, 51 (Colo. App. 1987)); *Dusky*

*v. United States*, 362 U.S. 402, 402 (1960).

¶ 39     "We review a trial court's competency determination for an

abuse of discretion."  *Mondragon*, 217 P.3d at 939.  "A trial court

abuses its discretion where its decision is manifestly arbitrary,

unreasonable, or unfair, or where it applies an incorrect legal

standard."  *Id.* (citation omitted).  By asserting her own

incompetency, Grubb bears "the burden of submitting evidence and

the burden of proof by a preponderance of the evidence."

§ 16-8.5-103(7), C.R.S. 2024.

16

¶ 40    We review Grubb's unpreserved claim for plain error.  *See*

*People v. Miller*, 113 P.3d 743, 748-50 (Colo. 2005).  "Plain error is

obvious and substantial."  *Hagos v. People*, 2012 CO 63, ¶ 14.  "We

reverse under plain error review only if the error 'so undermined the

fundamental fairness of the trial itself so as to cast serious doubt

on the reliability of the judgment of conviction.'"  *Id.* (quoting *Miller*,

113 P.3d at 750).

### 3.    The Trial Court Did Not Abuse Its Discretion in Failing to Sua Sponte Raise Competency

¶ 41    Grubb argues that the trial court had a duty to inquire

whether she was competent to proceed after her trial counsel

indicated that Grubb did not understand her advisements and the

evidentiary presentation.

¶ 42    Approximately ten months before trial Grubb's former defense

attorney raised the issue of competency due to her concerns about

repeated difficulties communicating with Grubb.  And before the

trial began, Grubb's trial attorney also expressed concern regarding

communication difficulties.  Part of this concern was that Grubb

appeared resistant to attorney feedback, and, at times, this rigidity

appeared delusional.

17

¶ 43    Dr. Gliser evaluated Grubb and the trial court found her competent approximately three months before trial.  Dr. Gliser's report addressed the communication difficulties and acknowledged that they were present.  However, her expert evaluation did not find that these underlying concerns demonstrated incompetency.  Instead, she opined that

> [i]t should be noted that during the current evaluation, Ms. Grubb evidenced the tendency to focus on relatively small details of her case (e.g., what time officers arrived on scene), to the exclusion of details that seemed much more salient to her defense.  She also described a legal strategy that appeared not delusional, but perhaps unwise.  It is possible that in future discussions with her attorney, she may benefit from more time to explain her point of view, then a detailed explanation of why such strategies may not prove helpful to her in the end.  *Although she is not delusional and does not present with classic symptoms of mental illness, it is probable that she will prove to be a challenging client due to underlying maladaptive personality traits.*

(Emphasis added.)

¶ 44    Grubb's argument — that the trial court should have, on its own, re-raised the issue of competency at trial — relies on the same underlying issues that were already addressed in Dr. Gliser's evaluation.  Her argument focuses on her difficulties

18

communicating with her attorney, confusion about the timing of her case, questioning the presentation of evidence, and feeling like she was in the dark about her case. None of these concerns demonstrated that Grubb lacked "a sufficient present ability to consult with [her] counsel with a reasonable degree of rational understanding, and a present rational and factual understanding of the proceedings against [her]." *Mondragon*, 217 P.3d at 940 (quoting *Morino*, 743 P.2d at 51).

¶ 45    In fact, many of Grubb's concerns about the presentation of evidence and the timing of her case are good indicators of competency. Her questions regarding the presentation of evidence, interviewing witnesses, her rights, witness interviews, and the sentencing timeline show that, while perhaps confused on some points, Grubb demonstrated a rational and factual understanding of the proceedings against her. *See id.*

¶ 46    Grubb also argues that the concerns that gave rise to her first evaluation should have put the issue on the trial court's "radar." It's true that a trial court must be aware of potential issues with a defendant's competency to stand trial. *See Drope v. Missouri*, 420 U.S. 162, 180 (1975) ("[E]vidence of a defendant's irrational

behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required."). However, the record before us does not demonstrate a change in circumstances or behavior from Grubb's evaluation and first competency determination that would have raised further concerns about her competency. If anything, Dr. Gliser's report cuts in the opposite direction, concluding that Grubb was competent to stand trial while flagging that she had difficult behaviors.

¶ 47     The trial court relied on Dr. Gliser's evaluation in ruling that Grubb was competent to proceed. At the time of trial, there were no significant changes in the underlying concerns that led to that evaluation. And there was no indication that Grubb's concerns at trial were the "result of a mental disability or developmental disability."

¶ 48     Thus, we see no grounds in the record that would have required the trial court to, on its own, re-raise the issue of Grubb's competency. Accordingly, we determine that the trial court did not abuse its discretion.

### III. Disposition

¶ 49    The judgment is affirmed.

JUDGE YUN and JUDGE BERGER concur.