21CA1446 Peo v Eden 04-03-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 21CA1446
San Miguel County District Court No. 17CR30
Mesa County District Court No. 21CR192
Honorable Keri A. Yoder, Judge
Honorable Gretchen B. Larson, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ika Eden,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE TOW
Dunn and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 3, 2025

Philip J. Weiser, Attorney General, Erin K. Grundy, First Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Casey J. Mulligan, Alternate Defense Counsel, Boulder, Colorado, for
Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1      Defendant, Ika Eden, appeals the judgment of conviction entered following jury verdicts finding her guilty of two counts of child abuse resulting in death.  We affirm.

I.      Background

¶ 2      Evidence at trial demonstrated the following.

¶ 3      Eden was a member of a small religious group, which included three other adults and two children.[1]  The two children were the biological children of one of the other members.  With the permission of a local farmer, Eden and the group settled on the farmer's land.  In 2017, the leader of the group determined that the spirits of the two children were impure.  The leader banished the children to a car on the property and forbade the other members to give the children food or water.  The bodies of the children were discovered after a neighbor contacted the police.

¶ 4      Eden was charged with two counts of child abuse resulting in death.[2]  The jury found her guilty on both counts.  The court

---

[1] The group consisted of two additional children, who are the biological children of the group's leader and who have no bearing on this proceeding.

[2] Other members of the group were also charged in the deaths of the children and were tried separately.

1

sentenced Eden, on each count, to forty-eight years in the custody of the Department of Corrections to be served consecutively.

## II.    Competency to Proceed to Trial

¶ 5    Eden argues that the trial court erred by determining that she was competent to proceed to trial.  We disagree.

### A.    Standard of Review

¶ 6    "We review a trial court's competency determination for an abuse of discretion."  *People v. Mondragon*, 217 P.3d 936, 939 (Colo. App. 2009).  "A trial court abuses its discretion where its decision is manifestly arbitrary, unreasonable, or unfair or where it applies an incorrect legal standard."  *Id.* (citation omitted).  Abuse of discretion is a deferential standard of review that "serves to discourage an appellate court from second-guessing [a trial court's decisions] based on a cold record."  *Carrillo v. People*, 974 P.2d 478, 486 (Colo. 1999).  "To say that a court has discretion in resolving [an] issue means that it has the power to choose between two or more courses of action and is therefore not bound in all cases to select one over the other."  *People v. Milton*, 732 P.2d 1199, 1207 (Colo. 1987).

¶ 7    "Subjecting a defendant to trial when [they are] incompetent violates the defendant's right to due process."  *Mondragon*, 217 P.3d

at 939.  A defendant is "[i]ncompetent to proceed" if, "as a result of a mental disability . . . , the defendant does not have sufficient present ability to consult with the defendant's lawyer with a reasonable degree of rational understanding in order to assist in the defense." § 16-8.5-101(12), C.R.S. 2024.  Alternatively, a defendant is incompetent to proceed, when "as a result of a mental disability . . . , the defendant does not have a rational and factual understanding of the criminal proceedings." *Id.*  A mental disability "means a substantial disorder of thought, mood, perception, or cognitive ability that results in marked functional disability, significantly interfering with adaptive behavior." § 16-8.5-101(15).

¶ 8        Once a defendant is deemed incompetent, "the party asserting that the defendant is competent has the burden of proof by a preponderance of the evidence." § 16-8.5-113(6), C.R.S. 2024. Upon the party's timely request, the court must hold a restoration hearing at which "the court shall determine whether the defendant is restored to competency." § 16-8.5-113(5)-(6).  To make a proper competency determination, the court must decide whether the defendant has "*both* a factual understanding and cognitive ability *and* perceptions and understandings that are rational and

3

grounded in reality." *Mondragon*, 217 P.3d at 941. "Thus, a defendant's factual understanding of the proceedings[;] proper orientation as to time, place, and person[;] and [their] ability to furnish accurately information as to [their] past history and the events at issue are not alone sufficient to establish the defendant's competence." *Id.* at 940.

## B.    Additional Background

¶ 9    In March 2018, shortly after Eden's arraignment, defense counsel requested the trial court order Eden to undergo a competency evaluation. Dr. Dawn Dawson conducted the examination and found that Eden did "not have a mental disability" and that she was, at that time, "competent to proceed to trial." After a hearing, without objection from either party, the trial court found Eden competent to proceed.

¶ 10    A few months later, the prosecution requested another competency evaluation based on writings discovered in Eden's jail cell. Those writings included assertions about her spirit, the spirits of the children, and the spirits of the judge and lawyers involved in her case. For example, Eden claimed that she was "the first of [Yahweh's] creation" and that she was "6,384,964 years old." She

4

also wrote that the children placed in the car were "the two Headed dragon," that "in one of their reincarnation[s,] . . . had randomly kidnapped eight (8) children for the sole pleasure of watching [them] die of hunger and starvation" and that their death in the car was "judgement [sic] that was meted out to their consciousness."

¶ 11 The trial court granted the prosecution's request and Dr. Dawson again evaluated Eden. This time, Dr. Dawson found that "Eden has a mental illness," that "her writings are delusional," and that she portrayed a "grandiose tone that [indicates] a possible mood disorder." Dr. Dawson concluded that Eden was incompetent to proceed to adjudication.

¶ 12 Eden was committed to the Colorado Mental Health Institute in Pueblo (CMHIP)[3] for restoration treatment, where she underwent five competency evaluations with Dr. Katherine Reis over the course of fourteen months. In each evaluation, Dr. Reis deemed Eden incompetent to proceed and diagnosed her with "Rule/Out Delusional Disorder," which Dr. Reis explained meant she was

---

[3] We recognize that, as of 2022, CMHIP underwent a name change and is now known as the Colorado Mental Health Hospital in Pueblo (CMHHIP). We will refer to it by its name at the time of Eden's inpatient stay.

unable to "rule in or out" whether Eden's beliefs were in fact delusional. Because Dr. Reis was no longer making progress with Eden, she requested that a new psychologist take over the case.

¶ 13    Dr. Nicole Glover completed the next competency evaluation. Her report noted that Eden's treating psychiatrist, Dr. Graham Hoffman, "removed the diagnosis of delusional disorder"; that Eden appeared to have a factual and rational understanding of the legal proceedings against her; and that any decision to express her religious convictions to the court were "more likely volitional choices to convey her philosophies, as opposed to an inability to control her behavior." Dr. Glover concluded that Eden did not have a mental disability and was competent to proceed to adjudication.

¶ 14    Defense counsel timely requested an additional competency evaluation. Dr. Sarah Lukens conducted the final competency evaluation. Dr. Lukens found that while Eden "has a reasonable understanding of court processes and the allegations against her, her delusional ideation interferes with her rational decision-making." Dr. Lukens further opined that "because of [Eden's] delusional disorder, she does not think rationally regarding the present legal matter despite her adequate factual knowledge."

Dr. Lukens concluded that Eden did have a mental disability and was incompetent to proceed to adjudication.

¶ 15   The trial court scheduled a restoration hearing, and over the course of two days, heard testimony from Dr. Glover, Dr. Lukens, and Dr. Reis.  The court also reviewed the competency reports submitted by the testifying witnesses, as well as Eden's CMHIP records.  Based on all this information, the trial court found "Dr. Glover's opinion [to be] the most reliable" and that it was consistent with Dr. Hoffman's opinion.  The court concluded that Eden "does not suffer from a diagnosable delusional disorder, but, rather, that she holds extreme religious beliefs" and that Eden's "persistence in applying her beliefs to the facts in this case demonstrates her unwillingness, rather than her inability, to hold a rational understanding of the proceedings."  The court found Eden competent to proceed to trial.

## C.   Analysis

¶ 16   Eden contends the trial court found her competent because she did not have a diagnosable mental disorder.  This argument misconstrues the court's findings.  While the court referred to the diagnostic criteria for "delusional disorder," *see* Am. Psychiatric

Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 90 (5th ed. 2013), it did so because "the only suggested mental disability that [Eden] may suffer from is delusional disorder." *See* § 16-8.5-101(12).

¶ 17    According to the trial court, one of the challenges presented by Eden's case was "differentiating delusional disorder from radicalized religious or political beliefs."  Dr. Reis maintained her "Rule/Out Delusional Disorder" diagnosis because "Eden's delusions could not be disproven[, and] there was diagnostic uncertainty."  Under these circumstances, the only possible mental disability Eden may have had was a delusional disorder.  But the testifying psychologists differed as to whether Eden suffered from delusions.

¶ 18    It was, therefore, within the trial court's province to weigh the competing expert views.  *See People v. Wright*, 648 P.2d 665, 668 (Colo. 1982) ("Where expert testimony is in conflict, the resolution of the conflict and the weight to be given to the testimony is solely the province of the trier of fact.").  Having considered the competing views, the trial court found that Eden's views were "extreme religious beliefs" rather than a "delusional disorder."  Accordingly, the court concluded that Eden did not have a mental disorder and,

based on this conclusion and not the lack of any official diagnosis, determined that she was competent to proceed.

¶ 19 Eden also argues that the trial court improperly based its finding of competence on its visual observation of Eden's behavior in the courtroom. Relying on *Lafferty v. Cook*, Eden argues that "the physical demeanor of a person suffering from a paranoid delusional system sheds no light on the extent to which [their] defense decisions are driven by a deluded perception of reality." 949 F.2d 1546, 1555 (10th Cir. 1991). Specifically, she contends that "the court's visual observation of Eden's behavior provided no information about whether she had a reasonable degree of rational understanding so that she could assist in her defense."

¶ 20 We first note that the language Eden quotes from *Lafferty* is not that of the Tenth Circuit Court of Appeals but that of an expert who had provided uncontroverted testimony in that case. While the court ultimately accepted this premise in *Lafferty*, it did so while "recogniz[ing] that a defendant's trial demeanor may in some cases constitute relevant evidence on the issue of competency." *Id.*

¶ 21 Moreover, we are not bound by the decisions of federal courts of appeal. *People v. Barber*, 799 P.2d 936, 940 (Colo. 1990) ("Lower

federal courts do not have appellate jurisdiction over state courts and their decisions are not conclusive on state courts . . . .").  And previous divisions of this court have held that a trial judge's observations of a defendant's actions and demeanor may properly influence a competency determination.  *See People v. Morino*, 743 P.2d 49, 52 (Colo. App. 1987) (holding a trial judge who "has had the opportunity [to] observ[e] [the] defendant, [their] actions," and their "general demeanor," has discretion in determining whether competency was successfully raised).  Here, the trial court noted that during in-person hearings, Eden "worked cooperatively with [her counsel]" and "spoke with her counsel in a congenial way and conferred with them during their questioning."  This, in combination with the expert testimony that Eden knew what was happening during these legal proceedings and understood her charges, is sufficient to support a finding that she could consult with her lawyer with a reasonable degree of rational understanding and was competent to proceed.  *See* § 16-8.5-101(12).

¶ 22    In any event, the issue in *Lafferty* was the relevance of the behavior of "a person suffering from a paranoid delusional system."

949 F.2d at 1555.  As noted, the trial court determined that Eden did not suffer from delusions.  Thus, *Lafferty* is inapposite.

¶ 23    Finally, Eden contends that "[m]ost of the evidence at the restoration hearing supported a finding of incompetence."  But as we have noted, it was for the trial court to select between the competing views of the experts.  *See Wright*, 648 P.2d at 668.  And because the experts gave differing views regarding Eden's competence, the trial court had the discretion "to choose between two or more courses of action."  *Milton*, 732 P.2d at 1207.  Thus, it was within the court's discretion to credit Dr. Glover's conclusion and find Eden competent to proceed.

### III.    Competency to Waive Counsel

¶ 24    Eden argues that the trial court erred by finding her competent to waive her right to counsel.  We disagree.

### A.    Standard of Review and Applicable Law

¶ 25    Criminal defendants have a constitutional right to represent themselves.  *See* U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16.  "A defendant must validly waive [their] constitutional right to counsel to exercise the right to self-representation."  *People v. Davis*, 2015 CO 36M, ¶ 15.  "[A] defendant validly waives the[ir]

11

right to counsel if [they] (1) [are] competent to waive the right, and (2) make[] the waiver voluntarily, knowingly, and intelligently." *Id.*

¶ 26 Under the first prong, a defendant who is competent to proceed to trial is competent to waive their right to counsel. *Id.* at ¶ 16.

¶ 27 As to the second prong, "[a] 'voluntary' waiver . . . is one that 'was not extracted by threats or violence, promises, or undue influence.'" *Id.* at ¶ 18 (quoting *People v. Smith*, 716 P.2d 1115, 1118 (Colo. 1986)). A waiver is knowing and intelligent when "the defendant understands 'the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'" *People v. Arguello*, 772 P.2d 87, 94 (Colo. 1989) (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948) (plurality opinion)).

¶ 28 "The trial court has the responsibility of ensuring the validity of a waiver by properly advising the accused." *Id.* at 95. The court must consider a defendant's decision to waive counsel based on the totality of the circumstances. *Davis*, ¶¶ 18-20. This includes

12

considering evidence of a defendant's mental illness and whether it has influenced their decision to waive counsel in such a manner that said waiver is not voluntary, knowing, or intelligent. *Id.*

¶ 29　"Whether a defendant effectively waived the right to counsel, and therefore can exercise the right to self-representation, is a mixed question of fact and law." *People v. Lavadie*, 2021 CO 42, ¶ 22. "[W]e 'accept the trial court's findings of historic fact if those findings are supported by competent evidence, but we assess the legal significance of the facts de novo.'" *Id.* (quoting *People v. Coke*, 2020 CO 28, ¶ 10).

### B.　Additional Background

¶ 30　In June 2018, a few weeks after the court found Eden competent to proceed following Dr. Dawson's first evaluation, Eden's counsel moved to continue her trial beyond the speedy trial date because counsel had not yet retained a rebuttal expert. Though Eden initially refused to waive her right to speedy trial, she ultimately agreed to do so, and the court granted the motion.

¶ 31　The following day, Eden submitted a written request asking that she be allowed to represent herself. Eden indicated that she wished to participate in the proceedings pro se because she did not

believe it was necessary to wait for an expert witness in order "to prove [that she] is not guilty of the charges stipulated." Upon completion of an *Arguello* advisement, the court found Eden competent to waive her constitutional right to counsel and that her waiver was voluntary, knowing, and intelligent.

¶ 32 After Dr. Dawson completed the second competency evaluation, the trial court concluded that Eden was "not currently competent to waive her right to an attorney," reappointed her previous counsel, and ordered restoration services.

¶ 33 In March 2021, following the court's renewed finding that Eden was competent to proceed to trial, Eden once again requested that she be allowed to waive her right to counsel and proceed pro se. The trial court conducted another *Arguello* advisement, during which it clarified what would be expected of Eden should she choose to represent herself. The court also confirmed that Eden was not under the influence of any mind-altering substances, that she was thinking clearly, and that her decision to proceed pro se was not based on pressure or coercion. Eden agreed to have advisory counsel appointed to assist her. Having properly advised Eden, the court found that "Eden knowingly, voluntarily, and

14

intelligently waive[d] her right to counsel" and that, while it "may have concerns about her decision to proceed pro se," it was "ultimately her right to represent herself."

¶ 34 Eden's presentation of her case centered around her religious beliefs. She relayed to the jury that this was "cosmic case number one"; that the children's spirits "were not of the house of light"; and that this trial was "unsealing the Book of Daniel and Revelation," along with other religious references. As noted, the jury found Eden guilty on both counts.

### C. Analysis

¶ 35 Because we find no error in the trial court's determination that Eden was competent to stand trial, we necessarily conclude that she was also competent to waive her right to counsel. *See Davis*, ¶ 17. We turn, then, to whether Eden voluntarily, knowingly, and intelligently waived her right to counsel.

¶ 36 Eden argues that her mental health issues prevented her from voluntarily, knowingly, and intelligently waiving her right to counsel. Specifically, Eden points to her writings, which she characterizes as "replete with bizarre delusions," and her later presentation of her defense to the jury, which consisted of her

15

firmly held spiritual beliefs and their relation to the case at hand, as evidence of her mental health issues rendering her unable to represent herself effectively.

¶ 37    But the trial court found that Eden's views were not indicative of mental illness but, rather, were "extreme religious beliefs."  In other words, the court found that Eden did not suffer from a mental illness.  And we have discerned no error in that determination.

¶ 38    Of course, even a defendant who is competent to proceed to trial may nevertheless have mental health issues, and those mental health issues would be relevant to the court's consideration of whether a waiver of counsel is voluntary, knowing, and intelligent. *Id.* at ¶¶ 19-20.  But, other than Eden's religious beliefs — which, again, the trial court found (with record support) did *not* give rise to a mental health concern — Eden points to nothing in the record that would indicate she has any mental health issues.

¶ 39    The gist of Eden's claim is essentially that her waiver was not wise.  "But in this context, 'intelligently' does not refer to the wisdom of the waiver; rather, the court must honor a defendant's request to self-represent if it is satisfied that [the] defendant knows

what . . . she is doing and understands the consequences." *People v. Johnson*, 2015 COA 54, ¶ 18.

¶ 40    Here, the court asked Eden several questions to determine why she was choosing to waive her right to counsel. Eden responded that she felt that her "strategy" was something that the defense counsel would be unwilling to adopt. This stance is consistent with Eden's first request to proceed pro se in 2018, when she noted that her desire to represent herself stemmed from her need to explain "what happened and why" and that her truth was all she needed to convey at trial.

¶ 41    A trial court cannot stop a defendant from invoking their constitutional right to self-representation, and consequently waiving their right to counsel, simply because the defendant wishes to adopt an inadvisable defense strategy. *See id.* Eden clearly stated that her waiver was based on her need to share her story with the jury. When asked by the court, Eden also confirmed that this decision was not based on "any sort of pressure or coercion" but rather was her "desire from the first." *See id.* at ¶ 23 (holding that a defendant's unequivocal request to represent themself, on which the defendant never wavered or vacillated, weighs heavily in favor of

17

allowing the defendant to proceed pro se). Eden stated that she understood the charges, the prison sentences she faced should she be found guilty, her constitutional right to remain silent, and other legal practices at her disposal during trial.

¶ 42　　Eden's answers were sufficient for the trial court to find that her waiver was voluntary, knowing, and intelligent. And, even when considered under the totality of the circumstances, there is no indication that Eden's alleged mental health issues interfered with her understanding of the case. *Cf. Davis*, ¶ 20 (holding the trial court should consider whether a defendant's mental illness "prevent[s] [them] from broadly understanding the charges, punishments, defenses, and other essential facts of the case").

¶ 43　　Finally, relying on *People v. Romero*, 694 P.2d 1256, 1265 (Colo. 1985), Eden contends that the court "failed to monitor the proceedings to ensure that they did not become so fundamentally unfair as to result in a denial of due process." However, in *Romero*, the supreme court held that the defendant's participation in all phases of the trial was sufficient so as to not be considered a violation of the defendant's due process rights. *Id.* at 1266. Eden participated in the trial proceedings, and while her approach may

18

have been unconventional, it is not within the purview of this court to hold that a defendant may not proceed pro se solely based on their defense strategy or lack of technical legal skill. *See Johnson,* ¶¶ 18, 22.

¶ 44 Furthermore, despite Eden's argument otherwise, there was no indication that she was no longer competent to proceed during the trial. Eden's extreme religious beliefs were the primary reason she chose to proceed pro se, and her "persistence in applying her beliefs to the facts in this case demonstrate[d] her unwillingness, rather than her inability, to hold a rational understanding of the proceedings." *See supra* Part I.B.

¶ 45 Because Eden was competent to waive her right to counsel, her waiver of the right to counsel was valid so long as it was voluntary, knowing, and intelligent. In light of the trial court's advisement and its subsequent findings, we agree with the court that Eden's waiver satisfied these requirements.

## IV. Disposition

¶ 46 The judgment is affirmed.

JUDGE DUNN and JUDGE TAUBMAN concur.