**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Jeffery Joe KELLING, Defendant–**
**Appellant.**

**No. 04CA1079.**

Colorado Court of Appeals,
Division V.

Nov. 30, 2006.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Martinez Law, LLC, Esteban A. Martinez, Northglenn, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Jeffery Joe Kelling, appeals the judgment of conviction entered upon jury verdicts finding him guilty of second degree assault on a peace officer and attempted second degree assault on a peace officer. He also appeals his adjudication as an habitual criminal. We remand for further proceedings.

## I.

Defendant was charged with second degree assault on a peace officer and four counts of attempted second degree assault on a peace officer arising from an altercation in the county jail where he was an inmate. He was also charged with four habitual criminal counts.

Defendant's trial was initially scheduled for April 8, 2003. On January 7 and 21, 2003, and on March 25, 2003, defendant sent letters to the trial court, arguing that he had no memory of the incident, that he had medical problems and had not received the right medication while in custody, and that his attorney, a public defender, was ineffective for not investigating a mental condition defense. The trial court marked them as "received."

On March 27, 2003, defendant filed a pro se "Motion to dismiss public defender, and request for new counsel," arguing that counsel failed to interview witnesses, explain potential defenses to him, or even meet with him (except for one time when counsel tried to get him to take a plea), before the upcoming trial. Again, the trial court marked the motion "received."

Trial was thereafter rescheduled for August 26, 2003. At a hearing on May 5, 2003, the trial court informed defendant it would not rule on any of his motions because it would not rule on pro se motions while he was represented by counsel.

On or about July 15, 2003, defendant filed a pro se motion to dismiss the case because his right to speedy trial had been violated. In that motion, defendant continued to complain about counsel's representation, even blaming some of the "delays" on counsel.

The trial scheduled for August 26, 2003 was again continued, first, to December 2, 2003, and then to January 2004. Following a jury trial in January 2004, defendant was convicted of one count of second degree assault on a peace officer and one count of attempted second degree assault on a peace officer. The habitual criminal hearing was set for March 19, 2004.

At the March 19 hearing, defense counsel informed the court that defendant had expressed dissatisfaction with counsel's representation. The court asked whether there was a conflict that would prevent counsel from proceeding. Counsel stated that defendant had expressed a desire for a different attorney and that, in defendant's opinion, there was a conflict. However, counsel felt that if he could talk with defendant, the matter could be resolved.

The following discussion took place between the court and defendant:

THE COURT: [Defendant], is there anything that you wanted to say?

DEFENDANT: I'm not sure what I am allowed to say, Your Honor.

THE COURT: Well, let me say a few things, [defendant]. And I think you know exactly what is going on here, and it is my feeling that you are simply trying to delay these proceedings. I'm not inclined to let you do that. However, I'm not going to

force [defense counsel] to violate his ethical considerations and proceed, if there is a conflict that prevents him from doing so. If you do not want [defense counsel] to represent you, and because of that conflict he can't represent you, I'm willing to relieve him of his duties. I'll tell you right now, I'll not appoint other counsel.

DEFENDANT: That's fine.

THE COURT: I think regardless of what [defense counsel] or anybody else would have done at trial, you would have found fault with it. So I'm going to continue this one time. I am going to reschedule it for a hearing, and there will be no further continuances; either [defense counsel] represents you, or you have other counsel that you've hired to represent you, or you represent yourself. We're going on this thing the next time it is set. Is that clear to you, [defendant]? Is that clear, [defendant]?

DEFENDANT: Yes, sir.

On April 4, 2004, defendant sent the court a letter arguing that he was entitled to a new trial because trial counsel's assistance, before and during trial, was ineffective. At a hearing on April 12, defense counsel referred to the letter as a possible Crim. P. 35(c) motion and asked whether private counsel should be appointed. The court declined to appoint new counsel, stating, "I already told [defendant] that if he wants to hire somebody he can do that. We are proceeding on the hearing that's set for Friday on the habitual criminal charges."

At the start of the habitual criminal hearing, defense counsel informed the court that he was prepared to proceed but that defendant was renewing his request that alternate defense counsel be appointed. Defendant proceeded "under protest" with counsel after the court indicated that it would not continue the matter further.

Following the hearing, the court found defendant guilty of three of the habitual criminal counts and sentenced him to the Department of Corrections for concurrent terms of twenty-four years for second degree assault on a peace officer and twelve years for attempted second degree assault on a peace officer.

## II.

Defendant contends that his Sixth Amendment right to counsel was violated at trial and at the habitual criminal hearing when the trial court failed to inquire into his pro se complaints about counsel and instead told defendant that, even if a conflict of interest existed, he would have to proceed with current counsel or represent himself. We conclude that a remand is necessary with regard to defendant's pretrial complaints about counsel.

While an indigent defendant is entitled to effective appointed counsel, the defendant is not entitled to new counsel without first demonstrating good cause to require substitute counsel. *People v. Jenkins*, 83 P.3d 1122, 1125–26 (Colo.App.2003).

When a defendant objects to court-appointed counsel, the trial court must inquire into the reasons for the dissatisfaction. If the defendant establishes good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict that may lead to an apparently unjust verdict, the court must appoint substitute counsel. However, before substitute counsel is warranted, the court must verify the defendant has "some well founded reason for believing that the appointed attorney cannot or will not competently represent him." 3 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 11.4(b), at 555 (2d ed.1999); see *People v. Arguello*, 772 P.2d 87, 94 (Colo.1989) (quoting prior edition of this treatise); *People v. Garcia*, 64 P.3d 857, 863 (Colo.App.2002).

Disagreements pertaining to matters of trial preparation, strategy, and tactics do not establish good cause for substitution of counsel. *People v. Arko*, —— P.3d ——, ——, 2006 WL 2828868 (Colo.App. No. 04CA1050, Oct. 5, 2006).

With these principles in mind, we examine defendant's contention, first as it relates to trial (part A), and then as it relates to the habitual criminal hearing (part B).

## A.

Initially, we reject the People's assertion that defendant abandoned his pretrial objections to his public defender. In this regard, the People point to certain of defendant's statements indicating that he "reinstated," and "recanted" his motion to "fire," his public defender. However, when considered in their totality, the statements reveal that defendant accepted the assistance of counsel only because he believed he "really didn't have a choice" and "was ultimately d[u]ressed in[to] rehiring him." Given that the trial court had not responded to any of defendant's earlier entreaties, we conclude that defendant's choice to "reinstate" the public defender did not constitute an abandonment of his complaints.

Here, before trial, the trial court was repeatedly put on notice of various issues defendant had with counsel. Yet, instead of inquiring into these issues, the trial court disregarded them.

A court's failure to inquire into the reasons for a defendant's objections to court-appointed counsel does not require reversal in every instance. *People v. Hodges*, 134 P.3d 419, 426 (Colo.App.2005)(*cert. granted* Apr. 24, 2006).

A court's failure to inquire does not require reversal when a defendant has otherwise placed in the record his or her reasons for dissatisfaction with counsel, those reasons would not qualify as good cause for substituting counsel, and the defendant has not identified any other reason for dissatisfaction that would have been elicited through a formal inquiry. *See McKee v. Harris*, 649 F.2d 927, 933 (2d Cir.1981)(court's failure to inquire was harmless where defendant had volunteered the grounds for dissatisfaction, the grounds would not have warranted relief, and defendant had suggested no other reason that would have been elicited through a formal inquiry); *cf. People v. Arko, supra*, —— P.3d at —— ("[T]he trial court was not obligated to inquire further as to defendant's dissatisfaction with his counsel because defendant had fully articulated the disputes with his counsel in his pro se motions and at the pretrial conference. Those disputes pertained to trial preparation and other matters of strategy and tactics.... And defendant has not identified any previously undisclosed matters that would have been revealed upon further inquiry.").

Here, in letters and motions filed with the court months after his arrest and, in some instances, as scheduled trial dates approached, defendant detailed the grounds upon which he was dissatisfied with counsel: (1) counsel's not visiting him in jail, except to discuss a possible plea; (2) counsel's failing to procure a copy of a security videotape from the jail; (3) counsel's failing to investigate or interview witnesses who could support his theory that, because of medical or other problems, defendant was not even aware that he was involved in an assault; (4) counsel's failing to keep him apprised of the progress of any investigations or to discuss potential defenses with him; (5) counsel's allowing a preliminary hearing to be continued; (6) counsel's failing to prepare for a trial that could be conducted within statutory speedy trial limits; (7) counsel's refusing to call all his proposed witnesses; and (8) counsel's advising him not to go to trial but to take a "deal."

Defendant's complaints largely deal with matters pertaining to trial preparation, strategy, and tactics, matters which would not constitute good cause for substitution of counsel. *See People v. Arko, supra*. However, the complaints made months after defendant's arrest, and as scheduled trial dates approached, about counsel's lack of communication and nearly complete failure to investigate potential defenses raised a colorable claim of a complete breakdown in communication with counsel, an irreconcilable conflict with counsel, or a near complete lack of representation by counsel. This, in turn, triggered a duty of inquiry on the part of the court. *See United States v. Lott*, 310 F.3d 1231, 1248–50 (10th Cir.2002) (district court erred in finding defendant had not made the required showing of good cause, in light of defendant's repeated assertions that his attorney failed to communicate with him); *cf. People v. Rodriguez*, 914 P.2d 230, 295 (Colo. 1996) (failure to investigate may be grounds

for asserting ineffective assistance of counsel).

Two divisions of this court have held that a trial court's error in failing to inquire, or to inquire more thoroughly, is nonetheless harmless when, as here, a defendant does not assert on appeal that trial counsel was ineffective. *See People v. Fisher,* 9 P.3d 1189, 1193 (Colo.App.2000); *People v. Bolton,* 859 P.2d 303, 309 (Colo.App.1993).

However, in *Lott, supra,* the United States Court of Appeals for the Tenth Circuit rejected such an approach, for three reasons.

First, the Tenth Circuit reasoned, review for ineffective assistance of counsel requires examining the trial as a whole for fundamental fairness, whereas "a defendant's Sixth Amendment right to counsel can be violated by the deprivation of that right at any critical stage of the proceedings against him." *United States v. Lott, supra,* 310 F.3d at 1252.

Next, the court observed, if it were to "conflate ... [the] ineffective assistance inquiry with a defendant's motion to substitute counsel, [it] would in effect be analyzing motions to substitute counsel as *ineffectiveness* claims, which must almost always be brought on collateral attack." *United States v. Lott, supra,* 310 F.3d at 1252. Thus, a defendant's ability to raise the issue of a right to substitute counsel on direct appeal would effectively be eliminated. *United States v. Lott, supra.*

Finally, the court noted,

[I]t is at least possible for a defendant to receive effective assistance of counsel even in the face of no communication with his attorney, just as it is possible for a defendant to receive ineffective assistance of counsel when the defendant and counsel do communicate. Good communication does not guarantee effective assistance of counsel, and bad communication does not guarantee ineffective assistance of counsel. It is precisely because effective communication and effective assistance do not always correspond that the two claims should be analyzed separately. And in this regard, we note that regardless of how we or the district court decide[s] [defendant's] motion to substitute counsel, the ruling on

that issue is not preclusive of a collateral claim of ineffective assistance of counsel. . . .

*United States v. Lott, supra,* 310 F.3d at 1252–53.

■ In Colorado, we too recognize that, because of the need for a developed factual record, an ineffective assistance of counsel claim should ordinarily be raised in a postconviction proceeding, not on direct appeal. *See Ardolino v. People,* 69 P.3d 73, 77 (Colo. 2003)("In light of the considerations potentially involved in determining ineffective assistance, defendants have regularly been discouraged from attempting to litigate their counsels' effectiveness on direct appeal."); *People v. Thomas,* 867 P.2d 880, 886 (Colo. 1994)("[T]his court has expressed a preference for having ineffective assistance of counsel claims brought in Crim. P. 35(c) proceedings."); *see also United States v. Galloway,* 56 F.3d 1239, 1240 (10th Cir.1995) (recognizing that "in rare instances an ineffectiveness of counsel claim may need no further development prior to review on direct appeal").

Thus, a defendant's ability to assert a substitution of counsel claim on direct appeal would effectively be eliminated if reversal could be obtained only by asserting a claim of ineffective assistance on direct appeal. For these and the other reasons cited by the court in *Lott,* we decline to follow the harmless error approach of *People v. Fisher, supra,* 9 P.3d at 1193, and *People v. Bolton, supra,* 859 P.2d at 308–09.

We reject, however, defendant's assertion that a trial court's failure to inquire into the grounds of a defendant's dissatisfaction with counsel is in and of itself structural error mandating a new trial. As noted in *Lott,* a court's failure to inquire in this situation is not error of the same character as the very limited number of errors which have been found by the United States Supreme Court to be structural in nature. *See United States v. Lott, supra,* 310 F.3d at 1250–51; *see also State v. Torres,* 208 Ariz. 340, 93 P.3d 1056, 1059–60 (2004)(rejecting assertion that trial court's failure to inquire was structural error, in part because there was always the possibility that the defendant would not have been entitled to substitution of counsel).

Consequently, we, like the courts in *Lott* and *Torres*, conclude a trial court's error in failing to inquire is subject to harmless error review. Accordingly, a defendant's remedy is not an automatic order for a new trial, but rather a remand for a hearing on the defendant's allegations.

On remand, the issue to be determined is whether substitution of counsel was warranted. To this end, defendant will have the burden of establishing that he had a completely fractured relationship with appointed counsel because of an irreconcilable conflict or a total breakdown in communication, or that appointed counsel would not competently represent him. *See United States v. Lott, supra,* 310 F.3d at 1249, 1253; *see also State v. Torres, supra,* 93 P.3d at 1059–61.

We note that defendant's pretrial complaints about counsel ended approximately six months prior to the actual January 2004 trial in the case. On remand, the court may consider the events both before and after defendant made his complaints:

> [T]he trial judge should not consider itself limited to the facts as they existed at the time it denied the motion. Indeed, subsequent events may be relevant to prove or disprove whether an irreconcilable conflict or a total breakdown in communication occurred. For instance, [defendant's] motion may have prompted his attorney to address [defendant's] complaints, thereby resolving the alleged conflict. *E.g., Bass v. United States,* 580 A.2d 669, 671 (D.C. 1990) ("[We] agree with the government that it would be unreasonable to ignore any relevant preparation that counsel might have conducted in the three months between the date of [defendant's complaint about the ineffectiveness of his counsel] and the beginning of the trial."). The trial court, therefore, may consider the motion to substitute counsel in light of the facts and circumstances both when the motion was originally made and also after it was denied.

*State v. Torres, supra,* 93 P.3d at 1061.

If, on remand, the trial court determines that defendant was entitled to substitute counsel for trial, the court shall order a new trial; if, however, the court determines that defendant was not entitled to substitute counsel for trial, the defendant's conviction shall stand affirmed. *See State v. Torres, supra,* 93 P.3d at 1060–61. The party adversely affected by the court's ruling will, of course, have a right to appeal that ruling.

## B.

Defendant separately contends that he was also denied his right to counsel at his habitual criminal sentencing hearing because, in addition to failing to inquire into even more recent complaints about defense counsel, the court stated that defendant would not be provided with substitute counsel even if a conflict of interest existed that prevented counsel's continued representation. We disagree.

Initially, we reject the People's assertion that defendant was given, but did not avail himself of, an adequate opportunity to discuss with the court the basis of his dissatisfaction with the public defender. In our view, such an opportunity did not arise when, in response to his statement that he did not know what he would be allowed to say, the trial court, rather than explaining what he could say, immediately began its ruling.

An indigent defendant is entitled to conflict-free representation by an attorney. *See People v. Martinez,* 869 P.2d 519, 524 (Colo.1994); *see also People v. Campbell,* 58 P.3d 1148, 1155 (Colo.App.2002). Consequently, the court erred in assuming it could require defendant to proceed either with conflict-laden counsel or pro se. *People v. Campbell, supra,* 58 P.3d at 1156.

That conclusion, however, does not end our inquiry. Instead, the outcome of this portion of defendant's appeal depends upon whether a conflict of interest existed and, if so, what effect it had on counsel's representation.

As noted by a division of this court:

> In general, a conflict of interest exists when: (1) an attorney's representation of one client is directly adverse to another client, [or] (2) when the attorney's ability to represent a client is materially limited by the attorney's responsibility to another

client or to a third person, or by the attorney's own interests. *People v. Edebohls,* 944 P.2d 552, 556 (Colo. App.1996).

Conflicts are categorized as either actual or potential. An actual conflict of interest is one that is "real and substantial," whereas a potential conflict is one that is "possible," is "nascent," or "in all probability will arise." *People v. Harlan,* 54 P.3d 871, 878 (Colo. 2002).

Once a trial court is put on notice of a potential conflict of interest between the defendant and defense counsel, it has a duty to inquire into the propriety of continued representation by counsel. *People v. Edebohls, supra.* Where, as here, the trial court neglects to inquire into a potential conflict, a defendant, to obtain reversal, must show that counsel was subject to an actual conflict of interest that adversely affected counsel's performance on behalf of the defendant. *See Mickens v. Taylor,* 535 U.S. 162, 170–76, 122 S.Ct. 1237, 1243–46, 152 L.Ed.2d 291 (2002).

Here, defendant sent the court a letter that was, in counsel's view, tantamount to a Crim. P. 35 motion alleging ineffective assistance of counsel during trial. The letter created a potential conflict of interest between defendant and counsel, inasmuch as counsel could not be expected to litigate his own ineffectiveness. *See People v. Duke,* 36 P.3d 149, 153 (Colo.App.2001). However, because counsel was wholly unconcerned during the habitual criminal hearing with defending his earlier acts or omissions, we conclude that he was not operating under an actual conflict of interest that adversely affected his performance during that phase of the case.

The case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Judge HAWTHORNE and Judge FURMAN concur.