23CA1594 Peo v Howell 08-07-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1594
Adams County District Court No. 87CR504
Honorable Roberto Ramirez, Judge
Honorable Kyle Seedorf, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Thomas J. Howell,

Defendant-Appellant.

ORDERS AFFIRMED

Division VI
Opinion by JUDGE YUN
Tow and Graham*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 7, 2025

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan Bishop, Alternate Defense Counsel, Denver, Colorado, for Defendant-
Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Thomas J. Howell appeals the postconviction court's orders denying his Crim. P. 35(c) motion arising from the discovery of a serology report. The court denied his motion primarily because of a stipulation by the parties at trial that contained "concessions beyond what the serology report asserted." We affirm.

## I.    Background

¶ 2    In March 1987, Howell kidnapped, at gunpoint, three children and one adult and later held hostage and sexually assaulted one of the children — his nine-year-old stepdaughter. Howell's stepdaughter was taken to the hospital, where a doctor examined her and collected samples for laboratory analysis. The doctor told the investigating officer that he saw no signs of sperm, trauma, or blood, but the victim's hymen was not intact.

¶ 3    Howell was later told by his attorney that "the rape kit was lost" but the prosecution was willing to stipulate to the doctor's findings. At the start of Howell's two-day bench trial, the parties stipulated that

> as a result of a medical examination performed by [the doctor] there was no sperm found and no semen found on the victim . . . . There were no vaginal tears, vaginal abrasions or bleeding and there was no hymen intact.

1

¶ 4    The victim testified that Howell licked her vagina, laid on top of her, and put his penis in her vagina.  She did not testify that he ejaculated.  (When asked if Howell had "messed on" her, she responded by referring to her scraped knee.)

¶ 5    After hearing the evidence, the court found Howell guilty of (1) three counts of second degree kidnapping; (2) second degree kidnapping — sexual assault; (3) attempted second degree kidnapping; (4) first degree sexual assault; (5) sexual assault on a child; (6) aggravated motor vehicle theft; (7) failure to leave premises; (8) four counts of menacing; and (9) first degree criminal trespass.  Regarding the sexual assault charges, the court explained that it was

> convinced beyond a reasonable doubt that the sexual assault testified to by [the victim] occurred.  The Court is convinced by the details submitted by [the victim] as to the act and the fact that she did make outcry to the very first person she could identify as being a friend as to what occurred.
>
> The Court . . . further is convinced by [the victim's] steadfast story from the date of the offense to the date of trial.  True, details changed in minor aspects but the Court would expect that from a child of [the victim's] tender years.

True, there's no medical evidence to support [the victim's] allegation but the Court can utilize its life experiences in arriving at the decision that it can be easily explained by a child's intolerance to pain and believes that Mr. Howell did not intend to hurt the child and would withdraw in sexual conduct when the child cried out.

¶ 6     The court sentenced Howell to an aggregate term of 112 years in prison. A division of this court affirmed the judgment of conviction but vacated the sentence and remanded the case for resentencing. *See People v. Howell,* (Colo. App. Nos. 88CA0752 & 88CA1106, Nov. 23, 1990) (not published pursuant to C.A.R. 35(f)). On remand, the trial court again sentenced Howell to an aggregate term of 112 years in prison, and a division of this court affirmed the sentence. *See People v. Howell,* (Colo. App. No. 92CA0247, Dec. 31, 1992) (not published pursuant to C.A.R. 35(f)). Thereafter, Howell filed numerous unsuccessful postconviction motions and appeals.

¶ 7     In 2018, Howell filed a request under the Colorado Criminal Justice Records Act for materials related to his case. In response, he received a document that neither he nor his lawyers had seen before: a serology report from the Colorado Bureau of Investigation with the laboratory results from the victim's rape kit. The report

stated only that the "examinations conducted . . . did not indicate the presence of semen."

¶ 8     In 2021, Howell filed a Rule 35(c) motion claiming that he was entitled to a new trial based on newly discovered evidence and that his trial and postconviction counsel were ineffective for failing to discover the serology report.  He also made conclusory allegations that the prosecution had withheld the report from the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

¶ 9     The postconviction court denied Howell's ineffective assistance of counsel claim without a hearing, finding that trial and postconviction counsel acted reasonably by not further investigating the missing rape kit when the prosecution said it was lost. However, the court determined that Howell was entitled to a hearing on his newly discovered evidence claim and ordered that a copy of his motion be sent to the Public Defender's Office.  It did not address his *Brady* claim.

¶ 10    Although Howell was appointed a public defender, he disagreed with her about what arguments to raise, told the court that he did not want her to represent him, and asked the court to appoint alternate defense counsel to take over the case until private

counsel could enter an appearance. The court held a hearing and determined there was no good cause for substituting counsel, only a disagreement about strategy. At Howell's request, the court allowed the public defender to withdraw and granted additional time for private counsel to enter an appearance; when private counsel did not do so, the court allowed Howell to proceed pro se.

¶ 11 Following the hearing on the newly discovered evidence claim, the postconviction court ruled that Howell was not entitled to a new trial. The court found that the serology report was not newly discovered evidence because "the parties stipulated to the serology report results" at trial. It further found that, even if it constituted newly discovered evidence, the serology report was not likely to lead to an acquittal on retrial because (1) the stipulation at trial contained "concessions beyond what the serology report asserted — all of which operate[d] in [Howell's] favor"; (2) the trial court "clearly accepted the fact that the medical exam rendered no physical evidence of the sexual assault" and found that "the lack of physical evidence was entirely consistent with guilt"; and (3) "even if the serology report had been introduced at trial, it would not have given

the [c]ourt any facts it did not already have when it decided the case."

¶ 12    Howell now appeals.

## II.    Analysis

¶ 13    Howell contends that (1) the postconviction court erred by denying his newly discovered evidence claim; (2) the prosecution violated *Brady* by withholding the serology report; (3) the postconviction court erred by denying his ineffective assistance of counsel claim; and (4) the postconviction court erred by denying his request for alternate defense counsel.

¶ 14    The People argue that Howell's claims were both untimely and successive; however, we decline to address the People's argument because we agree with the postconviction court that the claims fail on the merits.

### A.    Newly Discovered Evidence

¶ 15    Howell contends that the postconviction court erred by denying his motion for a new trial based on newly discovered evidence. We disagree.

#### 1.    Governing Law and Standard of Review

¶ 16    A defendant may challenge a conviction on the basis

> [t]hat there exists evidence of material facts, not theretofore presented and heard, which, by the exercise of reasonable diligence, could not have been known to or learned by the defendant or his attorney prior to the submission of the issues to the court or jury, and which requires vacation of the conviction or sentence in the interest of justice.

Crim. P. 35(c)(2)(V).

¶ 17 To succeed on a motion for a new trial based on newly discovered evidence, the defendant must show that (1) the evidence was discovered after trial; (2) he and his counsel were diligent in attempting to discover it before trial; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would probably result in an acquittal if presented at another trial. *People v. Muniz*, 928 P.2d 1352, 1357 (Colo. App. 1996).

¶ 18 A postconviction court's ruling on a Rule 35(c) motion after a hearing presents a mixed question of fact and law. *People v. Sharp*, 2019 COA 133, ¶ 12. "We defer to the court's findings of fact if they have record support, but we review any legal conclusions de novo." *Id.*

## 2. Discussion

¶ 19    Howell argues that the postconviction court erred by finding that the serology report was not newly discovered evidence and was not likely to lead to an acquittal on retrial.  Specifically, he argues that the doctor's conclusion, based on a physical examination, that there was no semen on the victim is not as reliable as the result of a laboratory analysis that "did not indicate the presence of semen." While "[t]he lack of . . . semen through the physical examination is not enough to create a reasonable doubt," he argues, the "lack of . . . semen through a lab examination is."

¶ 20    But even assuming Howell is correct that the serology report is newly discovered evidence and more reliable evidence of the absence of semen than the doctor's examination, he does not address the fact that the absence of semen is consistent with the victim's testimony regarding the sexual assault.  Indeed, as the postconviction court noted, the trial court expressly found that "the lack of physical evidence was entirely consistent with guilt."  Howell does not explain how the serology report would undermine or call into doubt any part of the victim's testimony.

¶ 21    Further, although the stipulation at trial was based on the "result of a medical examination performed by [the doctor]" and not on a laboratory analysis, it was considerably broader and more favorable to Howell than the serology report indicating only the absence of semen.  Specifically, the stipulation provided that the doctor's examination had revealed "no vaginal tears, vaginal abrasions or bleeding."  Yet despite the absence not only of semen but also of *any* physical evidence of sexual assault, the trial court was convinced of Howell's guilt beyond a reasonable doubt based on the victim's testimony, steadfast story, and immediate outcry.  We thus cannot agree with Howell that, "had [he] been allowed to present evidence that the serology results excluded semen . . . , the result of the trial likely would have been different."

¶ 22    We are not persuaded otherwise by Howell's reliance on *Commonwealth v. Hawk*, 709 A.2d 373 (Pa. 1998), and *State v. Fitzpatrick*, 118 So. 3d 737 (Fla. 2013).  In *Hawk*, 709 A.2d at 374, 377, the Pennsylvania Supreme Court held that the trial court erred by not allowing the defense "to present the testimony of a forensic scientist concerning the negative test results of a rape kit administered to the alleged victim" because "scientific evidence

9

corroborative of [the defendant's] denial of sexual intercourse would have been highly probative of his credibility." In *Fitzpatrick*, 118 So. 3d at 760, the Florida Supreme Court held that the defendant's trial counsel was ineffective for (among other things) failing to challenge the qualifications of a forensic nurse examiner because counsel "was 'under the impression' that she was qualified to testify." In reaching this conclusion, the court referenced testimony elicited during a postconviction evidentiary hearing that "forensic nurse examiners . . . have little to no involvement in the interpretation of the evidence." *Id.* But here, in contrast to both *Hawk* and *Fitzpatrick*, the parties stipulated to the lack of physical evidence of sexual assault. The doctor who examined the victim did not testify, and his qualifications were not at issue.

¶ 23     We thus agree with the postconviction court that the serology report would not likely result in an acquittal on retrial and, accordingly, that Howell is not entitled to a new trial based on newly discovered evidence. *See Muniz*, 928 P.2d at 1357.

## B.     *Brady*

¶ 24     Howell contends that the prosecution violated *Brady* by withholding the serology report. We are not persuaded.

10

¶ 25     Although the postconviction court denied Howell's Rule 35(c) motion without expressly addressing this issue, we may affirm on any ground supported by the record. *People v. Cooper*, 2023 COA 113, ¶ 7.

¶ 26     It is a violation of a defendant's constitutional right to due process if the prosecution suppresses evidence that is "favorable to an accused" and "material either to guilt or to punishment." *Brady*, 373 U.S. at 87; *see also People v. Bueno*, 2018 CO 4, ¶ 27. A *Brady* claim requires the defendant to show that "(1) the prosecution suppressed evidence (2) that is exculpatory or favorable to the defendant and (3) that is material to the case." *Bueno*, ¶ 29.

¶ 27     Suppression occurs where a prosecutor fails to disclose evidence, regardless of whether the prosecutor acts in good or bad faith. *Kyles v. Whitley*, 514 U.S. 419, 432 (1995). Evidence is exculpatory "if it tends to mitigate the likelihood of guilt or the severity of the sentence." *Bueno*, ¶ 31. And evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at ¶ 32 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). A "reasonable probability" is "a

11

probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Bagley*, 473 U.S. at 682).

¶ 28    Here, even assuming that the prosecution suppressed exculpatory evidence when it did not disclose the serology report to the defense, we conclude that the report was not "material" for *Brady* purposes — that is, there is no reasonable probability that, had the report been disclosed, the result of the proceeding would have been different. *Id.* As discussed above, the stipulation at trial was significantly broader and more favorable to Howell than the single result contained in the serology report, as the stipulation stated not only that no semen was found on the victim but also that she suffered no "vaginal tears, vaginal abrasions or bleeding." But the trier of fact nonetheless found the victim's testimony more persuasive than the lack of corroborating medical evidence. Accordingly, the serology report confirming part of the stipulation would not have changed the outcome.

### C.    Ineffective Assistance of Counsel

¶ 29    Howell contends that the postconviction court erred by denying his ineffective assistance of counsel claim. We disagree.

### 1. Governing Law and Standard of Review

¶ 30    "A criminal defendant is constitutionally entitled to effective assistance from his counsel." *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). "[T]o prevail on an ineffective assistance of counsel claim, a defendant must prove that 1) counsel's performance was deficient and 2) the deficient performance prejudiced the defense." *Dunlap v. People*, 173 P.3d 1054, 1062 (Colo. 2007). The failure to prove either of these two prongs defeats an ineffective assistance claim. *People v. Thompson*, 2020 COA 117, ¶ 50.

¶ 31    To establish deficient performance, a defendant must prove that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "[J]udicial scrutiny of counsel's performance must be highly deferential, evaluate particular acts and omissions from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Ardolino*, 69 P.3d at 76.

¶ 32    To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,*

466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

¶ 33 We review the summary denial of a Rule 35(c) motion de novo. *People v. Joslin*, 2018 COA 24, ¶ 5. A postconviction court may deny a Rule 35(c) motion without an evidentiary hearing if the allegations are bare and conclusory; the allegations, even if true, do not warrant relief; or the record directly refutes the allegations. *Id.* at ¶ 4.

## 2.    Discussion

¶ 34 Howell argues that the postconviction court erred by finding that trial and postconviction counsel acted reasonably by not further investigating the missing rape kit after the prosecution said it was lost. But he overlooks the stipulation that his trial counsel obtained. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," and "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Here, considering that counsel did not know what the results of the laboratory test would

14

be, counsel's decision not to independently investigate the missing rape kit was reasonable in light of the stipulation that there was no physical evidence of sexual assault.

¶ 35　Further, even if counsel performed deficiently, Howell's claim nevertheless fails the prejudice prong of *Strickland*. Because counsel obtained a stipulation broader and more favorable than the results of the rape kit and, as the trial court explained, the lack of physical evidence was consistent with the victim's testimony regarding the sexual assault, Howell cannot show a reasonable probability that, had counsel further investigated the missing rape kit, the result of the proceeding would have been different. *See id.* at 694; *People v. Phipps*, 2016 COA 190M, ¶ 39 (holding that, even if counsel "was deficient in failing to investigate," the defendant's ineffective assistance claim failed because he could not show prejudice).

¶ 36　We thus conclude that the postconviction court did not err by denying Howell's ineffective assistance of counsel claim without a hearing.

## D. Substitute Counsel

¶ 37    Howell contends that the postconviction court erred by denying his request for substitute counsel.  We again disagree.

### 1. Additional Background

¶ 38    After the postconviction court determined that Howell was entitled to a hearing on his newly discovered evidence claim, a public defender was appointed to represent him.  When the People responded to Howell's Rule 35(c) motion, the public defender filed a reply acknowledging that "[t]he [c]ourt has granted a hearing on a limited issue related to the issue of newly discovered evidence" and stating that, although she did not intend to file a supplement, "Mr[.] Howell maintains his initial claims in the petition he filed."

¶ 39    One month later, Howell sent a letter to the postconviction court, saying that he disagreed with the public defender about what arguments to raise.  Howell wrote that

> I have drafted the arguments in this Reply hoping that my lawyer would adopt them, and file them with the Court.  I was advised by my lawyer that if I broached certain issues or arguments she would not file the Reply.

Two months later, the public defender filed a motion to continue the hearing on Howell's newly discovered evidence claim, explaining that

> Mr. Howell has continued to communicate with defense counsel in preparation for the hearing. Mr. Howell has stated both that he intends to have [private counsel] enter on his case and that he will be filing a motion to dismiss undersigned counsel due to a conflict. . . . Defense counsel does ask that the Court leave the case set on that date so Mr. Howell can address the Court on his conflict claims.

Howell also drafted a pro se motion requesting a conflict hearing, in which he asserted that the public defender had not "taken the time to read and understand" his postconviction motion; had suggested to him that the postconviction court did not "have the acumen to understand" his motion; had failed to timely contact him after her entry of appearance; had not requested sanctions against the prosecution; and "would not utter the words 'new evidence' or 'DNA.'"[1]

---

[1] Howell was not able to file this motion with the postconviction court before the conflict hearing, and the court accordingly did not consider it, but it is included in the record on appeal.

¶ 40    On the date of the scheduled hearing regarding Howell's newly discovered evidence claim, Howell informed the court that he no longer wanted the public defender to represent him and that he was in touch with private counsel who was considering taking the case pro bono. In the meantime, Howell asked the court to appoint "attorney defense counsel," which we understand to mean alternate defense counsel. The postconviction court agreed to hold a conflict hearing and explained that

> if I find that there is a conflict which is preventing you, at no-fault of your own, from having adequate representation, then I pay for another lawyer to step in. If I don't, then your choices are [the public defender] with her legal education and training or you doing this by yourself or you having private counsel to do it.

¶ 41    In describing the alleged conflict, Howell said he believed that "the prosecution has committed nine false statements" but that the public defender disagreed and was "holding the prosecution's position." He mentioned that he and the public defender "went over the evidence and over it" but could not agree on the scope of the stipulation at trial and its relationship to the contents of the serology report.

¶ 42 After hearing Howell's explanation, the court found that there was no conflict but rather "a disagreement on the strategy of attacking [sic] the post-conviction relief." At Howell's request, the court then excused the public defender and granted a thirty-day continuance to allow private counsel to enter an appearance. Ultimately, Howell appeared at the hearing on his newly discovered evidence claim pro se.

2. Governing Law and Standard of Review

¶ 43 "[T]here is no constitutional right to post-conviction counsel under either the United States Constitution or the Colorado Constitution." *Silva v. People*, 156 P.3d 1164, 1167 (Colo. 2007). But "there exists a limited statutory right to post-conviction counsel in Colorado if a defendant's Crim. P. 35(c) motion has arguable merit" arising from section 21-1-103, C.R.S. 2024 (providing for the representation of indigent persons by the state public defender), and section 21-1-104, C.R.S. 2024 (describing the duties of the state public defender). *Id.* at 1167-68.

¶ 44 A defendant's waiver of the constitutional right to counsel is effective only if "the waiver is made voluntarily, knowingly, and intelligently." *People v. Lavadie*, 2021 CO 42, ¶ 26. But because a

19

defendant's right to counsel in a Rule 35(c) proceeding "is statutory and not constitutional, [the defendant's] waiver must be voluntary but need not be knowing and intelligent." *People v. Duran*, 757 P.2d 1096, 1097 (Colo. App. 1988). A defendant's waiver is voluntary when the defendant refuses to proceed with appointed counsel without good cause. *People v. Arguello*, 772 P.2d 87, 94 (Colo. 1989).

¶ 45 Good cause for the substitution of counsel includes "a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *Id.* (quoting *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981)). "However, before the substitution of counsel is warranted, the court must confirm that the defendant has 'some well[-]founded reason for believing that the appointed attorney cannot or will not competently represent him.'" *People v. Faussett*, 2016 COA 94M, ¶ 20 (alteration in original) (quoting *People v. Kelling*, 151 P.3d 650, 653 (Colo. App. 2006)).

¶ 46 "A conflict of interest exists when an attorney's ability to represent a client is materially limited by the attorney's own interests" or responsibility to another client. *People v. Stroud*, 2014

COA 58, ¶ 38; Colo. RPC 1.7(a). A complete breakdown in communication warranting substitution of counsel "must be evidenced by proof 'of a severe and pervasive conflict with [the defendant's] attorney or evidence that [the defendant] had such minimal contact with the attorney that meaningful communication was not possible.'" *Faussett*, ¶ 24 (alteration in original) (quoting *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002)). "Disagreements pertaining to matters of trial preparation, strategy, and tactics do not establish good cause for substitution of counsel." *Kelling*, 151 P.3d at 653.

¶ 47     "We review the trial court's denial of an indigent defendant's request for substitute counsel for an abuse of discretion." *People v. Johnson*, 2016 COA 15, ¶ 29. "A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or is based on an erroneous understanding or application of the law." *Id.*

### 3.     Discussion

¶ 48     Howell argues that the postconviction court erred by finding that no good cause existed for substituting counsel. Specifically, he argues that the record supports a finding that the public defender

"would not file the Reply" and "refused to advocate for him," indicating a conflict so severe and pervasive as to constitute a complete breakdown in communication. *See Faussett*, ¶ 24.

¶ 49     But what Howell actually told the postconviction court was that the public defender "would not file the Reply . . . *if I broached certain issues or arguments*." (Emphasis added.) As he explained to the court, he had "drafted the arguments" he wanted to make, but the public defender refused to adopt them. Howell's explanation of the alleged conflict thus supports the postconviction court's finding of "a disagreement on . . . strategy," which would not constitute good cause for substitution of counsel. *See Kelling*, 151 P.3d at 653.

¶ 50     Moreover, the record does not reflect that the public defender refused to represent Howell at the hearing. Although she elected not to file a supplement to his postconviction motion, she acknowledged the issue set for hearing and told the court that Howell maintained his claims. She also indicated that she and Howell had "continued to communicate . . . in preparation for the hearing," and Howell similarly acknowledged their ongoing communication when he told the court that he and the public

22

defender had been "over the evidence and over it."  Although "[a] court-appointed public defender does not have a duty to prosecute a claim for post-conviction relief after determining that there is no arguable merit to the defendant's claim," *People v. Breaman,* 939 P.2d 1348, 1351 (Colo. 1997), the public defender here never indicated that she thought there was no arguable merit to Howell's claim or that she would not prosecute the claim for postconviction relief on his behalf.  Rather, she would not adopt the strategy Howell proposed and make the arguments he wanted her to make.

¶ 51    Because the record supports the postconviction court's determination that no good cause existed for substitution of counsel, we conclude that the court did not abuse its discretion by declining to appoint alternate defense counsel.  *See* § 21-2-103(1)(a), C.R.S. 2024 ("The office of alternate defense counsel shall provide legal representation . . . [i]n cases involving conflicts of interest for the state public defender . . . .").

## III.   Disposition

¶ 52    The postconviction court's orders are affirmed.

JUDGE TOW and JUDGE GRAHAM concur.

23