23CA2137 Peo v Silvis 04-16-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2137
Adams County District Court No. 21CR2511
Honorable Jeffrey Smith, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

James Silvis,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Johnson and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 16, 2026

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Lauretta A. Martin Neff, Alternate Defense Counsel, Montrose, Colorado, for
Defendant-Appellant

¶ 1 Defendant, James Silvis, appeals the judgment of conviction entered on a jury verdict finding him guilty of attempted first degree murder and first degree assault. We affirm.

## I. Background

¶ 2 According to the trial evidence, Silvis hit the victim, a coworker, in the head with a hammer, fracturing his skull and causing brain injuries. The prosecution charged Silvis with attempted first degree murder, first degree assault, and two crime of violence sentence enhancers. (The prosecution also charged Silvis with a bias-motivated crime but dismissed that charge before trial.)

¶ 3 In a recorded police interview following Silvis's arrest, he admitted to hitting the victim in the head with a hammer. He said he had done it because the victim had previously threatened and bullied him and because the United States had become a dangerous place. But, he explained, nothing in particular had happened the day of the incident to prompt the attack. When asked if he was trying to kill the victim, Silvis said he "probably didn't care," but he was aware that hitting the victim with a hammer in the head had the potential to kill him.

¶ 4    Before trial, Silvis filed a motion to remove his court-appointed counsel and appoint substitute counsel.  The district court denied the motion after a hearing.

¶ 5    Silvis asserted self-defense at trial.  He testified that he hit the victim with a hammer because he feared for his safety.  He claimed the victim had told him that day that he would "be dead by morning," and he knew the victim to bring a gun to work.  However, he admitted that the victim was not actively threatening him and was seated at a desk facing away from him when he hit him with the hammer.  Silvis said he did not intend to kill the victim or cause him serious bodily injury when he hit him.

¶ 6    The victim testified that he did not specifically recall the attack but remembered seeing blood on his arm, falling to the ground, and waking up later in the hospital.  The victim also did not recall ever threatening Silvis.

¶ 7    The prosecution played a surveillance video for the jury that showed footage from "shortly before the incident until shortly afterwards."  In the video, Silvis can be seen walking with a hammer in his hand.

¶ 8    The jury convicted Silvis as charged. The district court sentenced him to forty-eight years in prison for attempted first degree murder and a concurrent term of thirty-two years in prison for first degree assault.

## II.    Discussion

¶ 9    Silvis contends that the district court erred by denying his pretrial request for substitute counsel. We disagree.

### A.    Applicable Law and Standard of Review

¶ 10    Although an indigent criminal defendant has a constitutional right to counsel, they do not have a right to their counsel of choice. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *People v. Travis*, 2019 CO 15, ¶ 8. Moreover, the right to counsel includes the effective assistance of counsel, but it "does not necessarily include 'a meaningful attorney-client relationship.'" *People v. Arguello*, 772 P.2d 87, 92 (Colo. 1989) (quoting *Morris v. Slappy*, 461 U.S. 1, 14 (1983)).

¶ 11    When an indigent criminal defendant objects to court-appointed counsel, the court must inquire into the reasons for the defendant's dissatisfaction. *People v. Bergerud*, 223 P.3d 686, 694 (Colo. 2010); *Arguello*, 772 P.2d at 94. Before a

substitution of counsel is warranted, the court must determine whether the defendant has a well-founded reason to believe court-appointed counsel either cannot or will not competently represent them. *People v. Kelling*, 151 P.3d 650, 653 (Colo. App. 2006). "As long as the [district] court has a reasonable basis for believing that the lawyer-client relation has not deteriorated to the point where counsel is unable to give effective aid in the fair presentation of a defense, the court is justified in refusing to appoint new counsel." *People v. Schultheis*, 638 P.2d 8, 15 (Colo. 1981). If the defendant establishes good cause, such as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict that may lead to an unjust verdict, the court must appoint substitute counsel. *Arguello*, 772 P.2d at 94.

¶ 12     Courts consider four factors in evaluating the constitutional implications of a request for substitute counsel: (1) the timeliness of the request; (2) the adequacy of the court's inquiry into the defendant's complaint; (3) whether the attorney-client conflict was so great that it resulted in a total lack of communication or otherwise prevented an adequate defense; and (4) whether the

defendant substantially and unreasonably contributed to the underlying conflict. *Bergerud*, 223 P.3d at 695.

¶ 13   We review a district court's decision to deny substitute counsel for an abuse of discretion. *People v. Weeks*, 2015 COA 77, ¶ 101. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *People v. Johnson*, 2021 CO 35, ¶ 16.

## B.   Additional Background

¶ 14   The district court appointed the public defender's office to represent Silvis. Five months before trial was scheduled to begin, Silvis filed a motion to dismiss his court-appointed counsel and appoint substitute counsel. He claimed that (1) he had not been fully informed of all his "rights and methods of practice" during court proceedings; (2) "additional information and discovery" were available but were not being pursued by current counsel; and (3) additional defense methods were required but he and counsel had reached "insurmountable differences." The court set the matter for a hearing.

¶ 15   At the hearing, Silvis raised five specific concerns, and defense counsel responded to each one. Silvis first claimed that he had

5

been telling counsel for eighteen months that the surveillance video from the scene was "redacted" and there was "more to this video than what [wa]s being shown." Counsel explained that she did not have evidence that the surveillance footage had been "tampered with."

¶ 16    Next, Silvis claimed that he told counsel about text messages and photographs on his phone that would corroborate that some of the prosecution witnesses knew there was an "issue" between Silvis and the victim before this incident. Silvis told the court he did not know where his phone was located. Counsel said she was investigating the issue and "reaching out to the people that Mr. Silvis t[old] me that he made complaints to." She said Silvis's phone was presumably in evidence, and she was trying to find a way to obtain evidence from it in a confidential manner.

¶ 17    Third, Silvis asserted that, during a motions hearing, counsel did not challenge the detective's testimony that Silvis was "covered in blood." Counsel responded that whether or not Silvis was covered in blood was "not super relevant to our defense" but would be subject to cross-examination at trial.

¶ 18    Fourth, Silvis claimed that, during a motions hearing, counsel did not challenge his recorded interview with police, which he said had no sound for a portion of it.  Counsel explained that "there [wa]sn't a whole lot [she could] do with that" because she had no evidence of bad faith with regard to the video.

¶ 19    Finally, Silvis said that the discovery was "read" to him only once eighteen months prior, and he had been denied access to it since then.  Counsel responded that a paralegal had gone through discovery with Silvis and could do so again if necessary, but she could not "give a copy of discovery to in-custody clients."

¶ 20    The district court asked counsel if there was anything she had heard at the hearing that gave her any concern about her ability to move forward as defense counsel.  She responded, "Not at all."

¶ 21    The district court then applied the four *Bergerud* factors and denied Silvis's request for substitute counsel.  The court first found, with respect to factors one and four, that Silvis's motion was timely and that he had not substantially and unreasonably contributed to the alleged conflict.  The court next found, as relevant here, that Silvis did not establish a complete breakdown in communication or that the alleged conflict would prevent an adequate defense.  The

court also found that there was nothing to suggest that counsel could not continue to adequately represent Silvis.

## C.    Analysis

¶ 22    Silvis takes issue with the district court's application of the second and third factors described in *Bergerud*.

¶ 23    Regarding the second factor, Silvis contends that the district court's inquiry into his complaints was improperly limited to his express concerns at the hearing.  He asserts that the court should have broadly construed his complaints by making "specific or clarifying inquiries" about things like whether there was a breakdown in communication with counsel, whether he and counsel were engaging in meaningful discussions, and whether counsel had conducted sufficient investigations.  *See Bergerud*, 223 P.3d at 696-97 (A court should broadly construe a pro se litigant's allegations "to ensure he is not denied review of important constitutional issues simply for his inability to articulate his concerns within the legal lexicon.").

¶ 24    As we have said, upon receiving a motion to substitute counsel, a court must inquire into the reasons for the defendant's request.  *See id.* at 694.  The district court here did just that.  At

the hearing, the court said to Silvis, "[P]lease tell me in your own words what that issue or issues is or are" and prompted him for additional details by asking him three times if he had "[a]nything else" to assert and asking him at the end, "[I]s there . . . any last thing you want me to know?" The court gave Silvis the opportunity to discuss and address all of his complaints against counsel. Silvis cites no authority, nor have we found any, for the proposition that the court should have followed up on his complaints with specific questions. And his assertion that the court's duty to broadly construe his allegations demands that the court ask such questions is unsubstantiated. Moreover, there is no support in the record for Silvis's argument that the court "used [his] lack of sophisticated articulation to rule against him, to deny substitute counsel."

¶ 25 As to the third *Bergerud* factor, Silvis contends that he sufficiently established a complete breakdown in communication that resulted in counsel's inability to present an adequate defense. Even broadly construing Silvis's complaints against counsel, we disagree.

¶ 26 "The third factor focuses on the underlying constitutional concern: whether the disagreement or communication breakdown

inhibits the presentation of an adequate defense or the defendant's complete representation by counsel." *Id.* at 696. "The type of 'total breakdown' in communication which would warrant substitution of counsel must be evidenced by proof 'of a severe and pervasive conflict with [the defendant's] attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible.'" *People v. Rodriguez,* 2022 COA 98, ¶ 63 (quoting *People v. Faussett,* 2016 COA 94M, ¶ 24).

¶ 27    Regarding Silvis's assertion that counsel did not challenge the detective's testimony or his recorded police interview at motions hearings, those are "matters of trial preparation, strategy, and tactics[, which] do not establish good cause for substitution of counsel." *Kelling,* 151 P.3d at 653; *see also McCoy v. Louisiana,* 584 U.S. 414, 422 (2018) (Defense counsel has the authority to decide matters "such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" (quoting *Gonzalez v. United States,* 553 U.S. 242, 248 (2008))).

¶ 28    Likewise, Silvis's complaint that counsel only allowed him to review discovery once in eighteen months does not warrant

substitution of counsel. *See People v. Krueger*, 2012 COA 80, ¶ 21 ("[C]ounsel's decision to provide the defendant with limited access to selected discovery materials, though the defendant wants to review all discovery materials, does not create a conflict warranting substitution of counsel."). Nevertheless, counsel said at the hearing that Silvis could review discovery again if he desired, and neither the record nor the briefs show that this did not occur.

¶ 29    That leaves Silvis's claim that a complete breakdown in communication occurred because counsel did not properly investigate the allegedly redacted surveillance video or the alleged text messages and photos on his phone, which he claims inhibited the presentation of an adequate defense. But Silvis's allegations coupled with counsel's testimony at the hearing did not demonstrate a "severe and pervasive conflict" such that "meaningful communication was not possible." *Rodriguez*, ¶ 63 (quoting *Faussett*, ¶ 24).

¶ 30    At the hearing, counsel said she had found no evidence that the surveillance footage had been tampered with, implying that she had looked into Silvis's concern regarding the alleged redaction of the video. On appeal, Silvis argues that, due to a lack of

communication, counsel misunderstood him regarding the surveillance video. He says his concern was not that the video was tampered with but that the video was incomplete and did not show earlier interactions between him and the victim. But Silvis raised the incompleteness issue at the hearing and did not suggest that tampering was not the problem after counsel testified. Regardless, this instance of alleged miscommunication does not demonstrate a "total breakdown" in communication that would prevent an adequate defense and warrant substitution of counsel. *Id.*; *see also People v. Johnson,* 2016 COA 15, ¶ 32 ("Mere communication difficulties . . . do not demonstrate a complete breakdown in communication . . . ."); *People v. Thornton,* 251 P.3d 1147, 1151 (Colo. App. 2010) (refusing to find a complete breakdown in communication requiring substitute counsel even though counsel admitted to "a lot of communication breakdowns" because he assured the court that he was in contact with the defendant and continued to represent his interests).

¶ 31 Likewise, Silvis's complaint that counsel did not investigate the alleged text messages and photos on his phone that he claims would corroborate his version of the events does not demonstrate a

12

total breakdown in communication. At the hearing, counsel said she was investigating Silvis's allegations regarding the contents of his cell phone and reaching out to the people he said he had complained to about his relationship with the victim. And the record does not contradict her testimony. Silvis claims that, due to a communication breakdown, counsel failed to conduct these investigations, which is demonstrated by the fact that evidence from his phone was not presented at trial. However, the result of counsel's investigations — i.e., whether they revealed evidence supportive of self-defense — is not indicative of a "total breakdown" in communication between him and counsel. *Rodriguez*, ¶ 63.

¶ 32   *Bergerud* is instructive here. During trial, Bergerud requested new counsel, in part because his court-appointed attorneys had "baldly refused to develop the theory of self-defense and ignored his account of the night's events." *Bergerud*, 223 P.3d at 705. During in camera proceedings to address the potential conflict, Bergerud's attorneys "never commented on the nature of their disagreement with their client nor gave an account of their reasoning on pertinent issues concerning the development of Bergerud's defense." *Id.* at 692. Because of the attorneys' "reticence to discuss the underlying

13

dispute" and the record's resulting silence on their investigations, the supreme court could not conclude "whether the alleged breakdown in communications did indeed prevent Bergerud's attorneys from putting on an adequate defense." *Id.* at 705. Therefore, the court remanded for a hearing to determine, in part, whether Bergerud's attorneys had failed in their duty to investigate possible defenses due to a complete breakdown in communications. *See id.* at 704-07.

¶ 33     Silvis's situation here is markedly different. His counsel did not "baldly refuse" to present a self-defense defense, ignore his version of the events, or refuse to discuss her related investigations before the court. To the contrary, counsel said she was investigating the very things that Silvis believed would support his defense. And counsel presented a self-defense defense at trial. The fact that perhaps counsel's investigations did not reveal the evidence Silvis would have liked does not mean there was a complete breakdown in communication between him and counsel. *Cf. United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002) (the defendant sufficiently alleged a total breakdown in communication

because counsel never interviewed him prior to trial and he had been completely unable to contact counsel).

¶ 34 For these reasons, we conclude that the district court did not abuse its discretion by declining Silvis's request to appoint substitute counsel. The court made findings as to each *Bergerud* factor and concluded Silvis did not establish a conflict so great that it resulted in a total lack of communication or otherwise prevented the presentation of an adequate defense.

## D. Additional Arguments

¶ 35 To the extent Silvis raises additional arguments for the first time in his reply brief — such as that regarding defense counsel's "endorsement of every possible defense under the sun" — we will not address them. *See People v. Owens*, 2024 CO 10, ¶ 90.

## III. Disposition

¶ 36 The judgment is affirmed.

JUDGE JOHNSON and JUDGE GOMEZ concur.